30 C.C.P.A.(Patents)

## McCOY v. PFEIFFER.

### Patent Appeal No. 4645.

Court of Customs and Patent Appeals.

Feb. 1, 1943.

R. H. Waters, of Akron, Ohio (Edmund H. Parry, Jr., of Washington, D. C., Gordon C. Mack, of Akron, Ohio, W. B. Morton, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

914

Luther E. Morrison, of New York City (Morrison, Kennedy & Campbell, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Interference Examiners of the United States Patent Office rendering judgment on the record against appellant and awarding priority of invention of the subject matter defined in the two counts in issue (Nos. 1 and 2) to appellee.

The interference is between appellant's patent No. 2,168,651, issued August 8, 1939, on an application filed June 30, 1936, and appellee's application No. 193,214, filed February 28, 1938.

The counts in issue originated in appellant's patent, and were copied by appellee for interference purposes. They read:

"1. A method of packaging which includes the steps of heating a film of stabilized rubber hydrohalide until the same acquires a high degree of elasticity, and stretching the same in contact with the surface of an article to be wrapped therein.

"2. A method of packaging which includes the steps of enclosing an article to be packaged at least partially with a film which includes a rubber hydrohalide and a substance of such character and in such an amount as to retard photochemical disintegration of the rubber hydrohalide and which has been heated to a temperature and for a time sufficient to shrink said film about 10% without imparting even temporary tackiness to said film."

Appellee is the junior party, and the burden was upon him to establish priority of invention by a preponderance of the evidence.

The invention relates to a method of packaging articles, and, as will be observed from the quoted counts, is limited, as stated in count 2, to "a film which includes a rubber hydrohalide and a substance of such character and in such an amount as to retard photochemical disintegration of the rubber hydrohalide," that is, "a film of stabilized rubber hydrohalide," as stated in count 1.

The interference was declared April 9, 1940.

On August 2, 1940, appellant filed an application, serial No. 349,984, for the reissue of his patent. The reissue application did not contain claims corresponding to the counts in issue, nor did it contain any statement that appellant's invention was limited to, or depended upon, the use of a film of *stabilized* rubber hydrohalide. On the contrary, in appellant's reissue oath it was stated that, when heated, *unstabilized* rubber hydrohalides react substantially the same as *stabilized* rubber hydrohalides; that appellant was not aware of that fact at the time of the issuance of his patent; that appellant's patent was inoperative or invalid for the reason that the specification and the claims were defective and insufficient; and that the errors contained in the specification and claims arose through inadvertence or mistake and without any fraudulent purpose on the part of appellant.

Appellant's reissue application was accompanied by the written assent of appellant's assignees.

On August 14, 1940, appellant filed two affidavits which corroborated the statement contained in the reissue oath; that is, that, when heated, *unstabilized* rubber hydrohalides react the same as *stabilized* rubber hydrohalides.

In a decision rendered August 22, 1940, the Commissioner of Patents stated that appellant's reissue application would be open to inspection by appellee; *that it might be separately prosecuted during the prosecution of the interference,* but that it would not be passed to issue without the approval of the commissioner until the interference was finally determined.

On September 20, 1940, appellee Pfeiffer filed a motion requesting that the interference be suspended, and that his application be remanded to the Primary Examiner for further *ex parte* prosecution during the pendency of appellant's reissue application or until a new interference was declared between appellee's application and appellant's reissue application. Attention was called in appellee's motion to the fact that claims corresponding to the interference counts were not in appellant's reissue application; that they were to be surrendered by appellant upon the allowance of his reissue application; and that the surrender of such claims would terminate the interference.

On September 23, 1940, the Examiner of Interferences denied appellee's motion

to stay and remand for the purposes therein set forth, and stated that appellant *"should make his position clear as soon as possible";* that the parties had until October 16, 1940, to file motions; and that as the reissue application of appellant did not contain claims corresponding to the counts in the interference, appellant had *"until October 16, 1940, to show cause why judgment should not be rendered against him."* (Italics not quoted.)

On October 16, 1940, appellant responded to the order to show cause, stating that his reissue application had been amended to include all the claims in his patent, and that the interference could proceed with the counts here in issue if the Examiner of Interferences so desired. Appellant requested, however, that the Examiner of Interferences give due consideration to the fact that appellant's purpose in filing his reissue application was to present claims which he believed more accurately defined the invention, and also requested that claims of the reissue application which were identical with the involved counts, except that they were not limited to *stabilized* rubber hydrohalide, be made the basis of the interference. On the same date, appellant moved to substitute his reissue application for his patent and to place additional counts (which need not be discussed here) in the interference. Appellant also requested in the motion that the counts here in issue "be abandoned and be replaced" by the broader claims (claims 2 and 6 of the reissue application) referred to in the response to the order to show cause.

In a decision dated October 28, 1940, the Examiner of Interferences noted appellant's response to the order to show cause why judgment should not be rendered against him, dismissed appellant's motion to substitute his reissue application and to add the counts therein set forth for the reason that appellant failed to allege in his motion that the proposed counts were deemed to be patentable and patentably distinct from each other and for the further reason that appellant had *"not effectively disclaimed in claims 2 and 6 of the patent* [involved counts 1 and 2] *the limitation omitted in the said proposed counts,"* and stated that *without "such disclaimer the motion constitutes a species of experimental prosecution whereby in the event of adverse ruling on priority on the two proposed counts the patentee* [appellant] *could retain claims 2 and 6* [in the patent] *without actual judgment thereon."* (Italics ours.)

On November 2, 1940, counsel for appellant filed an amended motion to substitute in the interference appellant's reissue application which contained the claims of his patent, including claims corresponding to the counts in issue, as well as additional claims. In the amended motion, counsel stated that the Examiner of Interferences dismissed appellant's original motion to substitute his reissue application containing the broad claims *because appellant had not disclaimed the narrow claims* (the two claims of his patent corresponding to the counts in issue), and that appellant could not "afford to disclaim" the claims of his patent until he was "assured that the reissue application" was "free from all informalities" and the broad claims therein held allowable. Counsel further stated that both the broad and narrow claims related to the same invention; that counsel could not argue that they were patentably distinguishable; and that the broader claims more accurately defined appellant's invention.

In a decision of the Examiner of Interferences, dated November 7, 1940, appellant's amended motion to add counts to the interference was set for hearing January 2, 1941.

On January 25, 1941, appellant again amended his reissue application by including in his specification matter contained in his patent which was the basis for the narrow patented claims, including those here involved.

On March 17, 1941, the Primary Examiner, before whom appellant's reissue application was being prosecuted, rejected all of the claims in appellant's reissue application, except those corresponding to the claims in appellant's patent (concerning which no reference was made in the examiner's decision), on the ground that they were unsupported by appellant's original disclosure, stating that there was no suggestion in appellant's patent that materials other than *stabilized* rubber hydrohalide could be used in appellant's process, and that the rejected claims were based on new matter. Some of the claims were also rejected on prior art.

Thereafter, on March 25, 1941, counsel for appellant, in the *ex parte* prosecution of appellant's reissue application, filed an amendment to that application, cancelling the amendment of January 25, 1941, hereinbefore referred to, and also cancelling

from the reissue application the claims corresponding to the claims of appellant's patent. In the remarks accompanying the stated amendment, counsel for appellant stated that the matter included in the reissue application by the amendment of January 25, 1941, relating to the use of *stabilized* rubber hydrohalide, and the claims corresponding to the claims of the patent which were limited to the use of *stabilized* rubber hydrohalide were at variance with the statements contained in the reissue oath, and had no place in the reissue application; that the disclosure in appellant's patent was sufficient to support the broader claims contained in his reissue application; that, until the reissue application was allowed, the involved counts, which were copied from appellant's patent, were available for interference purposes; and that, in the event the reissue application was not allowed, the claims of the patent would be enforced throughout the period of the patent grant. On that same date, March 25, 1941, counsel for appellant filed a motion in the interference proceeding, cancelling the amendment of January 25, 1941, and also cancelling the claims corresponding to the claims of appellant's patent. It was stated in that motion that:

"Reference should therefore be had to the patent wherever these claims [the counts in the interference] are mentioned.

"In view of the fact that the interference involves the patent, there was no reason for placing McCoy [appellant] under order to show cause for not making the patent claims in the reissue application."

On that same date, March 25, 1941, the Primary Examiner, who rejected all of the claims in appellant's reissue application as hereinbefore noted, denied appellant's amended motion to substitute his reissue application for his patent in the interference, stating that all of "The claims are under rejection on several grounds which are adhered to here." The Primary Examiner also stated, as he did in his decision in the *ex parte* proceeding, that appellant's reissue oath was insufficient; that one of the alleged errors mentioned therein did "not appear to be an error since applicant" had "reinserted the paragraph in question [the paragraph containing the disclosure upon which the narrower claims in the patent were based] in the specification"; that the broad claims in the reissue application were broader than the original disclosure in the patent, and were based on new

matter; and that there was no suggestion in the patent that any material other than *stabilized* rubber hydrohalide might be used in appellant's process. Attention was called to the fact that the reissue oath contained, in substance, the statement that at the time his patent issued, appellant was not aware of the fact that, when heated, *unstabilized* rubber hydrohalide reacted substantially the same as *stabilized* rubber hydrohalide.

In its decision, dated April 3, 1941, the Board of Interference Examiners, in awarding priority of invention to appellee (the junior party), reviewed the facts hereinbefore set forth, and stated that the order of the Examiner of Interferences requiring appellant to show cause why judgment should not be rendered against him was issued because of the failure of appellant to include in his reissue application (filed subsequent to the declaration of the interference) the claims from his patent corresponding to the counts here involved, and that appellant's failure to include such claims in his reissue application indicated a "probable intention" on his part "to relinquish the claims of the patent." The board further stated that, instead of prosecuting an *ex parte* appeal from the Primary Examiner's decision holding the oath accompanying appellant's reissue application to be insufficient for the reasons hereinbefore set forth, appellant, on March 25, 1941, filed an amendment cancelling the claims of the patent corresponding to the counts in issue and the paragraph in the specification containing the disclosure of the use of *stabilized* rubber hydrohalide in his process; that, in the remarks accompanying the amendment, appellant stated that the disclosure contained in the paragraph referred to and the claims of the patent were at variance with the statements contained in the reissue oath; and that by cancelling the claims of the patent and the paragraph in the specification containing appellant's disclosure and failing to prosecute an *ex parte* appeal, appellant "elected * * * to withdraw the patent claims from the reissue" and "therefore elected not to further prosecute the involved claims in the reissue application but to prosecute other claims which prosecution if successful will complete the surrender of the patent." The board also stated that *"Since the pendency of a reissue application supersedes the patent and McCoy's* [appellant's] *announced intention is to take out the reissue application without the claims of the patent, his action renders the interference contest on*

the patent claims an idle ceremony"; that as appellant "had assumed two conflicting positions, it is considered that no useful purpose would be served by *again issuing against him an order to show cause based on his latest action cancelling the added claims"*; and that appellant's action in cancelling the claims to the subject matter hereinbefore stated is the *"equivalent of a disclaimer of the involved claims of the patent,* warranting the issuance of judgment on the record against him, which judgment will be not further withheld." (Italics not quoted.)

Appellant filed a request for reconsideration of the board's decision, which was denied. Appellant then filed a petition with the Commissioner of Patents, requesting that the Board of Interference Examiners be directed to withdraw its decision awarding priority of invention to appellee and to postpone further proceedings until appellant's reissue application was finally disposed of or, in the alternative, dissolve the interference. The petition was denied by the commissioner. Appellant filed a request for further consideration by the Commissioner of Patents, which was denied. Thereafter, appellant filed with the commissioner a request for a hearing, claiming that the Board of Interference Examiners had acted summarily and that appellant had never had a hearing. That request was denied by the Examiner of Interferences. Whereupon, an appeal was taken to this court.

It is contended here by counsel for appellant that appellant neither expressly, nor by his conduct, disclaimed the subject matter defined by the involved counts, and that the Board of Interference Examiners was without authority to render a judgment of priority in favor of appellee, the junior party.

■ As pointed out by counsel for appellant in their brief, a patent is not surrendered, nor is the subject matter claimed therein relinquished, upon the filing of a reissue application by the patentee. An application for a reissue is accompanied by a mere offer to surrender the original patent in the event the reissue application is allowed and the patent reissued. However, if the reissue application is not allowed, or if it is abandoned, the original patent is not surrendered, nor is the subject matter of the claims therein relinquished. See section 4916 of the Revised Statutes, U.S.C. Title 35, section 64, 35 U.S.C.A. § 64; rule 91 of the Rules of

Practice in the United States Patent Office, 35 U.S.C.A. Appendix; Allen v. Culp, 166 U.S. 501, 504, 17 S.Ct. 644, 41 L.Ed. 1093; and McCormick Harvesting Machine Co. v. Aultman, 169 U.S. 606, 612, 18 S.Ct. 443, 42 L.Ed. 875.

■ There are two *statutory* methods by which a patentee may disclaim subject matter covered by the claims of his patent, which claims are involved in an interference; namely, first, by securing a reissue of his patent in accordance with the provisions of section 4916 of the Revised Statutes, supra, and rules 85 to 92, inclusive, of the Rules of Practice in the United States Patent Office without including in such reissued patent claims to the subject matter involved in the interference, in which event the interference should be dissolved (Lattig v. Dean, 25 App.D.C. 591); and, second, by the patentee or his assignee filing a written disclaimer in the Patent Office in accordance with the provisions of section 4917 of the Revised Statutes, U.S.C. Title 35, section 65, 35 U.S.C.A. § 65, and rule 181 of the Rules of Practice in the United States Patent Office, in which event the interference should be dissolved. See Moore and McKee v. Bradley v. Doering, Jr., 1912 C.D. 205; Maxfield v. Waters, 47 U.S.P.Q. 280; Stein and Peters, Jr. v. Cunningham, 47 U.S.P.Q. 281.

A *statutory* disclaimer, under rule 181, supra, must be in writing, must be signed by the patentee or his assignee, must be attested by one or more witnesses, and must be accompanied by a filing fee of $10. As no disclaimer was filed by appellant in accordance with rule 181, supra, and as all of the claims in appellant's reissue application were under rejection at the time of the board's decision, it is obvious that the patented claims involved as counts in the interference were not relinquished or disclaimed in accordance with either of the hereinbefore mentioned *statutory* methods.

Rule 107 of the Rules of Practice in the United States Patent Office provides that an applicant or a patentee may avoid an interference in which he is involved by filing "a written disclaimer or concession of priority, or abandonment of the invention, signed by the inventor in person with the written consent of the assignee when there has been an assignment. Upon the filing of such an instrument by any party, judgment shall be rendered against him."

Rule 125 of the Patent Office rules provides that: "After an interference is finally declared it will not, except as herein otherwise provided, be determined without judgment of priority founded either upon the evidence, or upon a written concession of priority, or upon a written disclaimer of the invention, or upon a written declaration of abandonment of the invention, signed by the inventor himself (and by the assignee, if any)."

Appellant did not file a "written disclaimer or concession of priority, or abandonment of the invention" defined by the counts in the interference for the purpose of avoiding the interference, as provided by rule 107, supra. Furthermore, so far as appears of record, there was nothing in the conduct of appellant, either in the interference proceeding or in the ex parte prosecution of his reissue application, to indicate any intention on his part to disclaim or abandon the invention defined by the involved counts for the purpose of avoiding the interference. On the contrary, throughout the proceedings in the interference, counsel for appellant persisted in the contention that appellant could not afford to disclaim or abandon the invention defined by the counts in the interference until he was assured of the allowance of the broad claims (claims 2 and 6) in his reissue application, which counsel claimed more accurately defined appellant's invention and which were identical with the involved counts except that they were not limited to *stabilized* rubber hydrohalide. Under the related circumstances, the Board of Interference Examiners was clearly without authority to render judgment of priority of invention to appellee under the provisions of rule 125, supra.

It will be recalled that the board stated in its decision that the Examiner of Interferences' order requiring appellant to show cause why judgment should not be rendered against him was issued because of the failure of appellant to include in his reissue application the claims of his patent corresponding to the counts in issue. It will also be recalled that the order to show cause was issued by the Examiner of Interferences in his decision denying appellee's motion to suspend the interference and remand appellee's application to the Primary Examiner for further ex parte prosecution during the pendency of appellant's reissue application. Appellee's motion was obviously submitted to the end that priority of invention of all allowable common patentable subject matter might be determined in one interference proceeding.

It is not clear to the court why the Examiner of Interferences deemed it necessary to issue the order against appellant to show cause why judgment should not be rendered against him in his decision denying appellee's motion to suspend the interference. If the order was issued, as it evidently was, for the purpose of requiring appellant to relinquish or disclaim the claims of his patent involved in the interference, or, in the alternative, abandon his reissue application, it was without authority of law, as appellant clearly had the right, under the provisions of section 4916 of the Revised Statutes, supra, to file his reissue application and prosecute the same without being forced to disclaim or relinquish the claims of his patent which were not included in his reissue application and which appellant thought, rightly or wrongly, did not correctly define his real invention.

In the case of Thompson v. Keller, 1931 C.D. 2, a situation prevailed similar to that presented in the instant case, except that in that case an application for the reissue of the Thompson patent, from which the claims of the patent were omitted, was filed before the declaration of the interference. In his decision in that case, the Commissioner of Patents, among other things, said: "It is clear that this interference should not be determined or terminated until the reissue application filed by the party Thompson is either granted or abandoned, to the end that the status of the original Thompson patent be first finally settled."

In the case of Read v. Scott, 1902 C.D. 242, an interference was declared between Read's patent and Scott's application. During the pendency of the interference, Read filed a reissue application which contained the claims corresponding to the counts in the interference, as well as other claims. Thereafter, a second interference was declared between Scott's application and Read's reissue application. However, before the declaration of the second interference, Read cancelled from his reissue application two of his patent claims which corresponded to two of the counts in the original interference. Those claims had been rejected by the Primary Examiner on a reference. Thereupon, the party Scott moved for a judgment awarding priority of invention to him as to the two counts which were cancelled from Read's reissue application. The motion was denied by the

 

Examiner of Interferences and, on appeal, the examiner's decision was affirmed by the Commissioner of Patents. In his decision, the commissioner called attention to the fact that the two claims there in question were cancelled from Read's reissue application before that application became involved in the second interference, and stated that the cancellation of the patented claims from the reissue application did not amount to a disclaimer of those claims. In so holding, the commissioner relied upon the decision of the Supreme Court in the case of McCormick Harvesting Machine Co. v. Aultman, supra, where it was held, in substance, that until a patent was reissued the original patent stood, so far as the Patent Office was concerned, as though the reissue application had not been filed.

In the Read case, as in the case at bar, the patentee's reissue application was filed subsequent to the declaration of an interference between his patent and the application of the opposing party. There, as here, the patentee cancelled from his reissue application two of his patented claims which were involved in the original interference; and there, as here, such cancellation was effected *before* the reissue application became involved in an interference with the opposing party. (It will be recalled that appellant's reissue application has not been involved in an interference with appellee's application.)

The difference between the facts in the Read case and those in the instant case is that in that case the patentee Read included in his reissue application, as filed, the claims of his patent which were involved in the original interference and then subsequently cancelled them, whereas, in the instant case, appellant did not include in his reissue application, as filed, the patented claims involved in the interference, but rather, in his response to the order to show cause, inserted such claims in his reissue application, then, upon the rejection of that application by the Primary Examiner on the ground, among others, that the presence of the patented claims (involved as counts in the interference) with their supporting disclosure was inconsistent with the statements contained in appellant's reissue oath, cancelled the patented claims and their supporting disclosure, and, in so doing, stated that that subject matter had no place in his reissue application because, as stated by the Primary Examiner, it was inconsistent with the statements contained in the reissue oath.

It will be recalled that appellant was criticized in the board's decision for cancelling the patented claims (involved as counts in the interference) together with their supporting disclosure from his reissue application, and that the board, contrary to the provisions of section 4916 of the Revised Statutes, supra, the pertinent Rules of Practice in the United States Patent Office, and applicable decisions hereinbefore cited, made the cancellation of that subject matter the basis of its decision holding that appellant had disclaimed it.

For the reasons hereinbefore stated, we are unable to concur in the views expressed by the Board of Interference Examiners that the pendency of appellant's reissue application superseded appellant's patent, and that his cancellation of the patented claims, involved as counts in the interference, from his reissue application was the equivalent of a disclaimer of the subject matter of those claims. Accordingly, we are of opinion that, under the circumstances of this case, the board was without authority to render judgment on the record against appellant and award priority of invention to appellee.

The decision is reversed and the cause remanded for further proceedings.

Reversed and remanded.