**Blake HIESTER, Plaintiff,**

**v.**

**MILLER'S SUPER MARKETS, INC., a Division of National Tea Company, an Illinois corporation, Red Owl Stores, Inc., a Delaware corporation, Safeway Stores, Incorporated, a Maryland corporation, Defendants,**

**Unarco Industries, Inc., an Illinois corporation, Intervener.**

**Civ. A. Nos. 9045, 9047.**

United States District Court
D. Colorado.

Feb. 23, 1966.

Sheridan & Ross, Kermith F. Ross, Denver, Colo., for plaintiff.

Horace B. VanValkenburgh, Denver, Colo., for defendants Miller's Super Markets, Inc. and Red Owl Stores, Inc.

Holland & Hart, William C. McClearn, Denver, Colo., for defendant Safeway Stores, Incorporated, and for Intervener, Unarco Industries, Inc.

**WILLIAM E. DOYLE, District Judge.**

The above-entitled actions, consolidated for the purposes of this motion for summary judgment, arise under the patent laws of the United States, Title 35 U.S.C. § 271 et seq. Plaintiff Hiester, assignee of Schweitzer Patent No. 2,-860,885 on a child's seat for nesting carriers, alleges infringement of that patent by the defendants. In their motion for summary judgment defendants assert the record at this stage reveals that plaintiff's patent is invalid as to claims 1, 5, 6, 9, and 10. They rely on four patent office proceedings, hereinafter described, in addition to the pleadings, pretrial orders and an affidavit of one Ralph G. Hummer. Oral argument has been heard and lengthy briefs have been submitted. As we must ascertain whether there exists a dispute of material fact, a review of the pertinent events is in order.

On May 18, 1954, Fred W. Young, an employee of the Folding Carrier Corporation of Oklahoma City, Oklahoma, applied for patent on a child's seat attached to the inner side of the end gate of a nesting grocery carrier. Nesting carriers are designed so that the front end of one carrier may be inserted through the end gate of another carrier for storage purposes. Apparently prior to this time children's seats were separate devices attached to and removed from carts as desired. In the Young invention a steel wire panel pivotally attaches to the lower inner side of the end gate of a nesting carrier. Half-way between the top and bottom of the end gate a solid steel seat, affixed to a supporting base, is attached. The seat extends inward and connects to the pivoting steel wire panel. The end gate of the cart is open from top to bottom, providing ample leg room for a seated child. Young Patent No. 2,769,645 issued on November 6, 1956.

Kurt H. Schweitzer applied for a patent on a child's seat for nesting carriers on May 2, 1955. Schweitzer, since deceased, was an independent contractor who handled accounts of Folding Carrier Corporation. The Schweitzer invention is similar to the Young device in that it employs a steel frame which is pivotally attached to the lower end of the end gate and a seat structure suspended between the midpoint of the end gate and the pivoted frame. However, as the lower half of the frame is open and the lower half of the end gate is blocked by steel wires, the effective merchandise-containing portion of a Schweitzer-type cart is increased because merchandise can be placed at the back of the cart while the seat structure is in use. The seat structure also differs in that the supporting base is composed of several wires and the steel plate is hinged rather than attached to the support. Thus when the seat plate is flipped upward to a vertical position, closing off the leg holes in the upper half of the end gate, a separate small merchandise compartment is formed by the supporting base, the vertical plate and the top half of the pivotal frame, which is composed of several wires. Patent No. 2,860,885 issued to Schweitzer on November 18, 1958.

On July 8, 1955, Harold I. Sides of Chicago, Illinois, applied for patent on a child's seat for nesting carriers. His seat attaches to the outside of the grocery cart and is suspended from the handles. It includes, however, a hinged seat panel similar to that in the Schweitzer invention. In addition, a metal closure member attached to the seat panel may be utilized to form a separate mer-

chandise-containing compartment when the device is not used to support a child. Patent No. 2,889,151 issued to Sides on June 2, 1959. Claim 9 of the Sides patent describes the movable closure member and the separate merchandise-containing compartment.

On September 11, 1959, Schweitzer petitioned for a reissue of his patent to include additional claims 12 and 13. Both were modeled on Claim 9 of the Sides patent. Schweitzer asked that an interference be declared between the reissue application and Sides Claim 9. The interference action was terminated when Blake Hiester and the widow of Mr. Schweitzer executed an instrument, entitled "Concession of Priority," in which Sides Claim No. 9 was declared prior to Claims 12 and 13 of the reissue application. Accordingly, the reissue application was abandoned.

An affidavit of Ralph G. Hummer, Vice President of Unarco Industries, Inc. and since 1955 General Manager of Folding Carrier Corporation, a subsidiary thereof, states that in February, 1955 a cart and baby seat structure substantially similar to that described in the Young patent was manufactured and sold by the Folding Carrier Corporation.

Defendants contend that the combination of the Young patent, the known manufacture of Young-type carts and plaintiff's concession regarding Sides Claim No. 9 conclusively demonstrates that the Schweitzer patent is invalid. It is alleged there are no disagreements as to material fact, that all Schweitzer did was to change the permanent steel sheet member of the Young seat structure into a hinged plate, and that the signed concession precludes plaintiff from asserting that the Schweitzer hinged device was prior to the Sides device. At the heart of defendants' argument is the theory that the issue of validity turns solely on the question of whether the movable seat panel is an original invention under the patent laws.

■■ Without passing on the validity of defendants' theory, we find that substantial issues of material fact are present. It is to be noted that on the abandonment of the reissue application the original Schweitzer patent continued in force. See McCoy v. Pfeiffer, 1943, 133 F.2d 913, 30 CCPA 853. That patent and the claims therein protected must be presumed valid; it is not contested that defendants have the burden of proof on the issue of invalidity. From the evidence which is now tendered it appears that the Schweitzer patent encompasses more than the hinged seat member. While defendants urge in essence that every essential element in the Schweitzer patent except the hinged seat element was known previously in the trade, plaintiff forcefully disputes this fact question.

This dispute assumes added importance in the light of the fact that the signed concession does not expressly undermine the validity of the terms of the original Schweitzer patent. That instrument deals solely with the priority of Sides Claim No. 9 over the proposed claims Nos. 12 and 13 of the Schweitzer Reissue Application.

In Application of Gregg, 1957, 244 F. 2d 316, 44 CCPA 904, relied upon by defendants, the court states that an award of priority in an interference action is binding on the question of priority as to "any invention common" to the two applications. 244 F.2d at 318. It was there held that all disclosure in the patent of a party who prevailed in an interference must be deemed prior art within the meaning of the 1952 Patent Act in a subsequent contest involving the party adjudged junior in priority. The court in Gregg did not, however, hold that all claims of the junior party must be declared invalid. Indeed, the court went on to hold that two of the three claims of the applicant there involved were patentable distinctions over the disclosures deemed prior art as a result of an interference in which the applicant had been held junior in priority. Furthermore, the Gregg court's statements were based on the fact that the applicant had had opportunity during the interference to fully contest all claims common to

the two applications. Here the interference was limited from the outset to the single Sides Claim 9, in the context of a reissue application.

█ Thus, the concession here involved in no way constitutes a bar to plaintiff's assertion that his original patent and its claims are still valid. The decision in Hazeltine Research, Inc. v. Ladd, D.D.C.1964, 226 F.Supp. 459, affirmed D.C. Cir. 1964, 340 F.2d 786, affirmed 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965), in which the court held co-pending patents to be available as references on the issue of prior art, is also not concerned with the issue raised in the instant case. There counsel conceded that if the co-pending patents were relevant references, their combination negated the claim of invention. Even if all of the Sides patent be deemed to constitute prior art to the Schweitzer claims, an issue of material fact remains.

█ It is defendants' contention that the combination of the Young patent, the Sides patent and the fact that a grocery cart substantially similar to the Young design was manufactured prior to Schweitzer's patent application constitutes such prior art as to defeat all of its relevant claims. It is urged that the best that can be said for the Schweitzer application is that it is a mere combination. The United States Supreme Court decision of Great Atlantic & Pacific Tea Co. v. Supermarket Eq. Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950), rehearing denied 340 U.S. 918, 71 S.Ct. 349, 95 L.Ed. 663 (1951), is cited to support the argument that Schweitzer merely applied the teaching of Sides to the teaching of Young—a combination of existing ideas which can never be deemed an invention within the terms of the patent act. The following language is here pertinent:

"A patent for a combination which only unites old elements with no change in their respective functions, such as presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly." 340 U.S. at 147, 71 S.Ct. at 130.

In that case the Supreme Court held that the mere extension of a counter as described in a combination patent for a grocery store check-out device was not an invention within the terms of the patent act. However, the Court carefully pointed out that a combination which in part utilized existing elements but resulted in "some new quality or function" might well be sufficiently distinctive to be validly patented. See 340 U.S. at 152, 71 S.Ct. at 130. The Court did not hold or even suggest that a combination of old elements would invariably be found lacking in invention.

In this case the plaintiff asserts the Schweitzer patent did more than combine previously known elements. At the very least he urges that the Schweitzer patent combined old elements in a startling and effective new manner, as evidenced by commercial success and other evidence. Thus even were it assumed that the Sides patent in its entirety must be deemed prior art to the Schweitzer patent in its entirety, a factual issue would remain in the instant case. Plaintiff can not be foreclosed from proving that he has introduced new quality or function. Further testimony from non-interested, qualified experts would materially aid the resolution of this dispute. While not unmindful that the summary judgment remedy has been utilized in cases involving the issue of patent validity, we find that in the present case such device would not serve the ends of justice.

As issues of material fact are found to be in dispute, it is

Ordered, that defendants' motion for summary judgment be, and the same hereby is, denied.