## ALLEN v. CULP.

ERROR TO THE COURT OF COMMON PLEAS, NO. 4, FOR THE COUNTY OF PHILADELPHIA, STATE OF PENNSYLVANIA.

No. 252. Argued and submitted March 30, 1897. — Decided April 19, 1897.

When letters patent are surrendered for the purpose of reissue, they continue valid until the reissue takes place, and if the reissue is refused they stand as if no application had been made.

Whether, if the reissue be void, the patentee may fall back on his original patent, is not decided.

THIS was an action originally instituted in the Court of Common Pleas for the County of Philadelphia, by the defendant in error, Andrew J. Culp, against Alonzo W. Allen, to recover half of the profits made by the defendant from a cer-

tain patent for a cop and bobbin winding machine, granted jointly to Culp and Allen, and subsequently assigned to the defendant Allen.

The alleged consideration for the transfer of plaintiff's half interest was a promise on the part of the defendant that he would divide with him the profits made by the sale of the device, of which they were the joint owners, and also all damages which might be recovered against infringers of the patent; the principal object of the transfer being to enable the defendant to have title thereto for the purpose of prosecuting these infringers. It seems that in November, 1892, the defendant was advised by his counsel to apply for a reissue, in order to more fully protect the invention, and he thereupon obtained the signature of the plaintiff, his co-inventor, to the application by renewing the promises he had already made. Both parties joined in the surrender of their patent and in the application for a reissue, which, however, was rejected on the ground of unreasonable delay, and also upon the further ground that the new claims of the reissue had been anticipated by other patents. Counsel for the defendant, who appears to have had absolute control of the reissue proceedings, made no effort to meet the formal objection of the examiner, and permitted the application to lapse by his failure to prosecute it within two years. He also neglected to take an appeal from the rejection of the application.

In January, 1893, defendant informed the plaintiff that he did not intend to take any further proceedings with reference to the patent, and refused to fulfil his promise with reference to the division of profits.

Thereafter plaintiff began this suit to recover, under his contract with the defendant, the half of the profits which the latter had made out of the patent. The suit resulted in a verdict for the plaintiff for $225. A new trial being refused, defendant carried the case to the Supreme Court of Pennsylvania, by which the judgment of the Court of Common Pleas was affirmed, and the record remitted to that court. 166 Penn. St. 286. Thereupon defendant sued out this writ of error.

. *Mr. Hector T. Fenton* for plaintiff in error submitted on his brief.

*Mr. George Bradford Carr* for defendant in error. *Mr. Conway Dillingham* was on his brief.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

Upon the trial, the plaintiff having offered evidence in support of his case, the defendant put in evidence a certified copy of the application for a reissue of the letters patent in question, and also a model of the tension device made and sold by the defendant. The application for a reissue was made by Culp and Allen jointly, who prayed that they might be allowed to surrender the patent, and that the same might be reissued to Allen for the same invention upon an amended specification. To the specification was appended the usual affidavit to the effect that the deponents believed that the patent surrendered was inoperative or invalid, by reason of a defective and ineffective specification, in that it failed to properly describe the essential and important features of the invention, and that such errors arose from inadvertency, accident and mistake, and without any fraudulent or deceptive intention. The record also contained a communication from the examiner refusing the reissue upon the ground of unreasonable delay, and also because the new claims had been substantially anticipated by other patents.

Thereupon the court charged the jury, at the request of the plaintiff, that " where the reissue of letters patent is applied for the surrender takes effect only upon the issue of the amended patent, and if the issue is refused, the original patent is returned to its owner "; and that " the action of the Patent Office in refusing to reissue the patent in suit did not affect its validity, and the contract between the plaintiff and defendant in reference thereto was not rendered invalid by such action."

In this connection the court also refused to charge the jury,

at the request of the defendant, that "the joint act of the parties in surrendering the patent in question, and applying for a reissue thereof on November 18, 1892, amounted to a cancellation of the patent; and, being followed by a refusal on the part of the Government to grant the reissue, operated to end and determine the contract sued upon as to any of the patented machines made after such surrender."

The first statutory provision for the reissue of letters patent made its appearance in the act of July 3, 1832, repeated and expanded in the thirteenth section of the patent act of 1836, which provided generally that whenever any patent should be inoperative or invalid, by reason of a defective description or specification, or by reason of the patentee claiming more than he had a right to, if the error arose from inadvertency, accident or mistake, and without any fraudulent or deceptive intention, it should be lawful for the Commissioner, upon the surrender to him of such patent, to cause a new one to be issued for the same invention, for the residue of the period then unexpired for which the original patent was granted, in accordance with the patentee's corrected description and specification. This was but little more than putting in statutory form a power which this court had already held to exist, prior to the act of 1832, in the Secretary of State in the absence of a statute. *Grant* v. *Raymond,* 6 Pet. 218. But in construing this statute it was uniformly held by this court that the surrender of the patent for reissue was a legal cancellation and extinguishment of it; that no rights could afterwards be asserted upon it, and that suits pending for an infringement of such patent fell with its surrender, because the foundation, upon which they were begun, no longer existed. *Moffitt* v. *Garr,* 1 Black, 273; *Reedy* v. *Scott,* 23 Wall. 352, 364; *Peck* v. *Collins,* 103 U. S. 660.

To obviate the injustice to inventors occasioned by the peremptory requirement that the patent should be treated as extinguished from the moment it was surrendered for a reissue, it was provided, in section 53 of the patent act of 1870, amending the thirteenth section of the act of 1836, that upon the surrender of a patent for that purpose a reissue should be

granted " for the unexpired part of the term of the original patent, *the surrender of which shall take effect upon the reissue of the amended patent.*" These words were obviously inserted for the purpose of preventing the surrender taking immediate effect, and to postpone its legal operation until the patent should be reissued. When a patent is thus surrendered, there can be no doubt that it continues to be a valid patent until it is reissued, when it becomes inoperative; but if a reissue be refused, it is entirely clear that the surrender never takes effect, and the patent stands as if no application had ever been made for a reissue. Whether, if the reissue be void, the patentee may fall back on his original patent, has never yet been decided by this court, although the question was raised in *Eby* v. *King*, 158 U. S. 366; but as the original patent in that case was also held to be void, it did not become necessary to express an opinion upon the question. But if the original application for a reissue be rejected, the original patent stands precisely as though a reissue had never been applied for, unless at least the reissue be refused upon some ground equally affecting the original patent. If it were otherwise, every patentee who applies for a reissue would do so at the peril, not only of having his application refused, but of losing what he already possessed. This was the very contingency the act of 1870 was designed to provide against.

It is true that, in making his surrender, the patentee declares that his patent is inoperative and invalid, but this is not necessarily so for all purposes, but for the purpose for which he desires to have it reissued. Such a patent might be inoperative and invalid as against certain persons who had pirated the underlying principle of the patent, and avoided infringing the exact language of the claims, and yet be perfectly valid as against others, who were making machines clearly covered by their language. Such was the case here, since the defendant in his affidavit of defence admitted that, " after the dissolution of said firm, each party on his individual account continued the same business, deponent having made some of said patented machines." But in addition to this, the court charged the jury that unless the devices

made by the defendant were essentially the same as that covered by the patent there could be no recovery, and the verdict necessarily established their identity.

There was no error in the ruling of the court below, and its judgment is, therefore,

*Affirmed.*