UNITED STATES of America,
Plaintiff,

v.

MARIFARMS, INC. and Mitsutake
Miyamura, Defendants.

UNITED STATES of America,
Plaintiff,

v.

MARIFARMS, INC. and Motosaku
Fujinaga, Defendants.

Civ. A. Nos. 4305, 4306.

United States District Court,
D. Delaware.

July 13, 1972.

F. L. Peter Stone, U. S. Atty., Wilmington, Del., L. Patrick Gray, III, Asst. Atty. Gen., and A. David Spevack, Atty., Dept. of Justice, Washington, D. C., of counsel, for plaintiff.

Edmund D. Lyons and Henry N. Herndon, Jr., of Morris, James, Hitchens & Williams, Wilmington, Del., and Robert B. Washburn, of Woodcock, Washburn, Kurtz & Mackiewicz, Philadelphia, Pa., of counsel, for defendants.

## OPINION

LATCHUM, District Judge.

These two actions, brought by the United States on January 5, 1972, seek orders canceling two United States Patents and decreeing the same to be unenforceable and void *ab initio*.[1] The patents, which relate to methods for the artificial cultivation of shrimp, are U.S. Patent No. 3,473,509 (" '509 patent") granted on October 21, 1969 upon an application filed on March 6, 1967 in which Mitsutake Miyamura ("Miyamura") was named as the inventor and U.S. Patent No. 3,477,406 (" '406 patent") granted on November 11, 1969 on an application filed on June 29, 1967 which named Motosaku Fujinaga ("Fujinaga") as the inventor. Marifarms, Incorporated ("Marifarms") is the owner of both patents by virtue of direct and mesne assignments by the inventors. Each complaint charges (1) that the respective inventors made untrue statements in the Declaration accompanying their respective applications, (2) that the untrue statements resulted either in a fraud upon the Patent Office or a mutual mistake of fact[2] which prevented the Patent Office from giving proper consideration to the applications against the prevailing statutory standards, (3) that the fraud or mistake in fact was caused by the applicants' failure to disclose to the Patent Office a number of pertinent references which had been published in Japan and were in the public domain for more than a year prior to filing the applications, and (4) that such references were either authored by the applicants or were directly known to

---

1. The complaints in both actions are similar except that C.A. No. 4305 names Marifarms and Miyamura as defendants and relates to the '509 patent while C.A. No. 4306 names Marifarms and Fujinaga as defendants and relates to the '406 patent.

2. Despite the allegations of Par. XV of the complaints that the untrue statements "either were made by mistake in good faith by defendant, or were known by defendant to be untrue; in either event, these representations were relied upon by the Patent Office and resulted in either a mutual mistake of fact . . . or constituted a deliberate fraud", it became obvious from the Government's briefs and oral argument that the Government is relying entirely upon the allegations of actual or constructive fraud as the basis for canceling the patents rather than relying upon a mutual mistake of fact. The Court has so considered the allegations of the complaints. See United States v. Glaxo Group Limited, 302 F.Supp. 1, 12–14 (D.D.C.1969).

them although prepared by others at the time they signed the Declarations stating that they did not know or believe that the methods described and claimed in the applications were ever patented or described in any printed publication in any country more than one year prior to filing the applications.

On November 8, 1971 before the complaints were filed, the Government wrote to Marifarms enclosing copies of the complaints and advising that they would be filed on January 5, 1972 to cancel the patents unless Marifarms before that date filed Disclaimers in accordance with the second paragraph of 35 U.S.C. § 253, dedicating to the public the terminal portions of the terms of the two patents. Shortly after receipt of this letter, Marifarms' patent attorneys obtained from the Government translations of some of the references cited in the complaints. After studying these references, Marifarms' attorneys concluded that none of the claims in the patents were anticipated or disclosed by any of the publications cited in the complaints and so informed the Government by letter of December 27, 1971. Marifarms' attorneys also requested an opportunity to discuss the matter personally with the Government's attorneys before the complaints were filed to determine whether the Government disagreed with their opinion. Without further contact with Marifarms, the Government filed these actions on January 5, 1972.

On February 4, 1972, Marifarms filed in the Patent Office reissue application No. 224,354 based on the '509 patent and reissue application No. 224,350 based on the '406 patent. These reissue applications contained all the claims of the original patents, clarified an alleged ambiguity in Claim 10 of the '406 patent and added another claim to the '509 patent. The reissue applications also set forth all the references and publications cited by the Government in the complaints. On February 14, 1972, at Marifarms' request, its attorneys met with the Government's attorneys with a view to seeking an amicable disposition of the controversy. Marifarms was requested to submit its proposal to the Government by letter and this was done on March 1, 1972. Marifarms proposed (A) to request the Patent Office to expedite the reissue applications, to make a record of all prior art which came to Marifarms' or the Government's attention, and to provide the Government with all documents going to and received from the Patent Office in connection with the reissue applications, (B) if final rejection were rendered by the Patent Office holding all claims of the patents to be unpatentable and if no appeals were taken, Marifarms would proceed to dedicate the patents to the public, and (C) if some claims were held to be unpatentable and others were allowed, Marifarms would pay the final fee, let such applications issue and surrender the original patents. After further correspondence, the Government on March 23, 1972 advised Marifarms that its proposal for resolving the controversy was unacceptable.

Thereafter Marifarms moved to stay the present actions pending the outcome of the Patent Office proceedings on the reissue applications, and the Government moved to enjoin Marifarms from further prosecution of the reissue applications in the Patent Office. These two motions are now before the Court for determination.

### 1. Marifarms' Motion To Stay

In arguing for a stay of these actions pending the outcome of the Patent Office proceedings on the reissue applications, Marifarms contends that the thrust of the complaints simply come down to the question whether the patents would have issued had the Patent Examiner been apprised of the references and publications cited by the Government in the complaints. Thus, it says that since all the new references have now been cited in the reissue applications, this Court, in the interest of judicial and financial economy, should await the expert determination by the Patent Office whether the new refer-

ences bar the claims in whole or in part because such a decision might possibly resolve the controversy entirely or substantially narrow the issues before the Court. While this argument bears a surface appearance of reasonableness, it can not be accepted.

First, Marifarms misconceives the import of the complaints. They not only charge that the prior publications constituted a statutory bar to the issuance of the patents, but, more importantly, that the patents were obtained by actions which transgressed equitable standards of conduct because the applicants knowingly failed to disclose material facts which misled the Patent Office into granting the patents. Based upon these allegations of inequitable conduct, the Government claims that the patents should be annulled *ab initio*. It has long been settled that a patent, once granted, can be canceled for fraud in its inducement only by a suit in equity brought in a United States District Court by the United States. United States v. American Bell Telephone Co., 128 U.S. 315, 368, 370, 9 S.Ct. 90, 32 L.Ed. 450 (1888); United States v. American Bell Telephone Co., 159 U.S. 548, 555, 16 S. Ct. 69, 40 L.Ed. 255 (1895). The under-pinning for this rule is that a patent is a contract between the inventor and the Government. The consideration supporting the contract is the inventor's public disclosure of his invention in return for the Government's grant of an exclusive monopoly for a stated period of time. Thus, if a fraud is perpetrated in procuring the monopoly, the Government not only has the right but the obligation to seek its revocation in order to protect the public from a monopoly which was fraudulently obtained. United States v. Hartford-Empire Co., 73 F. Supp. 979, 981 (D.Del.1947). In view of the allegations of fraud, it would be an abuse of discretion for this Court to forestall the Government from litigating those issues which this Court, as a proper forum, must ultimately determine.

Second, prosecuting a reissue application is not a concurrent or equivalent remedy to an equitable action in this Court to cancel a patent. Upon the issuance of the patents in suit, they passed beyond the control and jurisdiction of the Patent Office and they can not be revoked or canceled by the President or any other officer of the Government. The only competent authority to annul and set aside a patent is vested in the United States Courts and not in the Patent Office which issued the patents. McCormick Harvesting Machine Co. v. Aultman, 169 U.S. 606, 608–609, 18 S.Ct. 443, 42 L.Ed. 875 (1898). Moreover, by filing the reissue applications Marifarms has surrendered nothing. It has long been established that the surrender of an existing patent referred to in 35 U.S.C. §§ 251 and 252 does not become effective until the reissue application is actually granted. The refusal to grant a reissue patent does not affect any of the common claims. On abandonment of any application for reissue, the original patent stands as if no reissue application had been filed. Allen v. Culp, 166 U.S. 501, 505, 17 S.Ct. 644, 41 L.Ed. 1093 (1897). Consequently, no remedy exists in the Patent Office on a reissue application to cancel or force a surrender of the original patents even for fraud in their inducement. That remedy exists only in the United States District Courts. A discretionary stay is usually granted in the interest of economy of time and effort where there is another proceeding pending between substantially the same parties involving similar issues and the remedies are equivalent. But here, there is no possibility that the Patent Office proceedings on the reissue applications can finally adjudicate the question of allegedly fraudulent conduct on the part of the inventors in obtaining the patents in suit.

Finally, the Patent Office procedures for handling reissue applications are not suited for dealing with an issue of fraud or deceptive intent. This Court is. The Patent Office lacks the power of discovery to explore completely into the factual background surrounding the filing of the original patent applica-

tions in order to determine whether inequitable conduct occurred. Moreover, the reissue application procedures in the Patent Office are *ex parte* proceedings. The Government, which has made serious charges of fraud in the present suits and has a vital interest in having the patents canceled if the fraud is proved, would be a complete stranger to the Patent Office proceedings and would be barred from participating. On the other hand, if the actions continue in this court the parties would have available complete discovery procedures, the proceedings would be adversary and their respective rights would be protected by the applicable rules of evidence and burden of proof.

After balancing the benefits against the disadvantages of a stay of these actions, the Court concludes that Marifarms' motions for a stay should be denied.

### 2. *Government's Motion For An Injunction*

As previously indicated, the Government has moved in each case for an order enjoining Marifarms from prosecuting the reissue applications in the Patent Office pending a determination by this Court whether the patents in suit were procured by fraud.

■■■■ To obtain an injunction a moving party is required to show that it is necessary to prevent immediate and irreparable harm. Holiday Inns of America, Inc. v. B. & B. Corp., 409 F.2d 614, 618 (C.A. 3, 1969). This burden the Government has not met. The issued patents in suit are presumptively valid. 35 U.S.C. § 282. The Government has alleged in unverified complaints that the patents were procured by fraud and should be canceled. Fraud, however, is never presumed but must be proved by clear and convincing evidence by the one alleging it. Monsanto Company v. Rohm & Haas Company, footnote 14, 456 F.2d 592, 601 (C.A.

3, 1972). Whether the Government in these suits can overcome the presumption of validity, regardless how weak that presumption may be,[3] and sustain its burden of proving fraud, must, of course, await trial and can not be decided on the present record.

■■■■ The Government also contends that the very existence of the outstanding patents causes injury to members of the public who may seek to enter the field but for the outstanding patents. This may be true but only if the patents were fraudulently obtained. There has been no proof of fraud in these cases; the Government has simply alleged fraud. Moreover, the Court has not been asked to enjoin the enforcement of the patents, and, in any event, there is an insufficient showing for such an injunction even had it been requested. The mere pendency of a bill to repeal a patent does not raise a presumption of nullity and does not affect the progress of a patent suit based on that patent. American Bell Telephone Co. v. National Improved Telephone Co., 27 F. 663, 666 (C.C.E.D.La.1886). Furthermore, no injunction will issue to restrain a patentee from bringing infringement suits pending a suit to cancel the patent upon which he proposes to bring them. United States v. Colgate, 21 F. 318 (C.C.S.D.N.Y.1884), *app. dis.* 127 U.S. 792, 32 L.Ed. 328 (1888). Accordingly, the Court perceives no valid reason to enjoin Marifarms on the present state of the record from prosecuting its reissue applications. No immediate or irreparable damage has been shown and there appears no necessity to interfere unduly with the administration of the patent laws.

On the other hand, if the Patent Office proceeds with the reissue applications, a matter totally within the control of that Office, its decision might possibly throw some light upon the issue whether that Office considers the references cited in the Government's com-

---

3. See Philips Electronic and Pharmaceutical Industries Corp. v. Thermal and

Electronics Industries, Inc., 450 F.2d 1164, 1176 (C.A.3, 1971).

plaint are bars to some or all the reissue claims under 35 U.S.C. § 102(b). This is so regardless of the binding effect such a determination might have in this Court in the present litigation.

Finding that the Government has not sustained its burden of showing immediate and irreparable injury for the injunctions requested, the Government's motions for such relief will be denied.

Submit order.