BALLY MANUFACTURING CORP., Appellant,

v.

Sidney A. DIAMOND, Commissioner of Patents and Trademarks, Appellee.

No. 79–1840.

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1980.

Decided Sept. 2, 1980.

---

7. Code of Laws of South Carolina, §§ 14 3 330(1), (2)(a).

8. Code of Laws of South Carolina, § 14-3 330(4).

John F. Flannery, Chicago, Ill. (Donald L. Welsh, A. Sidney Katz, Fitch, Even, Tabin, Flannery & Welsh, Chicago, Ill., on brief), for appellant.

Henry W. Tarring, II, Associate Sol., Washington, D. C. (Justin W. Williams, U. S. Atty., Linda B. Bridgeman, Asst. U. S. Atty., Alexandria, Va.; Joseph F. Nakamura, Sol., on brief), for appellee.

John F. Lynch, Sydney M. Leach, Walter R. Brookhart, Arnold, White & Durkee, Houston, Tex., on brief, for amici curiae.

Before RUSSELL, Circuit Judge, HARRY PHILLIPS, Senior Circuit Judge, Sixth Circuit, sitting by designation and Widener, Circuit Judge.

PHILLIPS, Senior Circuit Judge.

Plaintiff-appellant Bally Manufacturing Corp. filed this suit to enjoin the Patent and Trademark Office (PTO) from examining Bally's reissue patent application until the PTO promulgates rules to govern its consideration of unpublished evidence of prior invention by another. The district court dismissed on the grounds Bally had not exhausted its administrative remedies and had failed to establish that examining the reissue application under present PTO rules would subject Bally to irreparable harm. We affirm.

## I

Bally manufactures pinball machines and electronic games. On June 6, 1978, Bally was issued patent No. 4,093,232 for a "Player Operated Game Apparatus". Thereafter, Bally filed two infringement actions in the United states District Court for the Northern District of Illinois, Civil Actions Nos. 78 C 2246 and 79 C 713, against D. Gottlieb & Co., Williams Electronic, Inc., Rockwell International Corporation and Game Plan, Inc. These competing game manufacturers defended on the ground that Bally's patent is invalid because the claimed invention was obvious in light of the prior art, 35 U.S.C. § 103, and anticipated by the invention of another, 35 U.S.C. § 102(g). The two infringement actions, to which we shall refer jointly as the Illinois litigation, have been stayed by order of the Illinois district court pending a PTO decision on Bally's reissue application.

On August 25, 1978, Bally filed its application for reissue of patent No. 4,093,232. On February 28, 1979, Williams Electronics and D. Gottlieb & Co., defendants in the Illinois litigation, filed a protest[1] alleging the reissue claims are unpatentable because

---

1. 37 C.F.R. § 1.291 provides, in pertinent part:

§ 1.291 Protests and prior art citations by public.

(a) Protests against pending applications will be acknowledged and referred to the examiner having charge of the subject matter involved. A protest specifically identifying the application to which the protest is directed will be entered in the application file and, if timely submitted and accompanied by a copy of each prior art document relied upon, will be considered by the examiner.

of obviousness and prior invention by another, 35 U.S.C. §§ 103 and 102(g) respectively. On September 15, 1979, infringement defendant Rockwell International joined the Patent Office fray by filing its own protest, also alleging prior invention by another. Both protests were based on evidence discovered in the Illinois litigation, and the protest by Rockwell included supporting excerpts from internal corporate documents and deposition testimony subpoenaed by the defendants in that litigation.

Alarmed by the possibility that the patent examiner would consider these unpublished documents and deposition excerpts in making his ex parte examination of Bally's reissue application, Bally petitioned the Commissioner of Patents and Trademarks to stay the proceedings. The Assistant Commissioner for Patents denied the request and forwarded the reissue application to the examiner for examination in light of all the prior art evidence, including that submitted by the protestors.

Bally filed this suit on October 29, 1979, seeking an injunction to restrain the PTO from examining Bally's reissue application in light of the protestors' evidence of prior invention by another. Senior District Judge Oren R. Lewis denied the injunction. He held that the decision by the Assistant Commissioner to proceed with the examination is an interlocutory order from which Bally ultimately will have extensive administrative (35 U.S.C. §§ 132, 7 and 134) and judicial (35 U.S.C. §§ 141 or 145) appeals. The court held Bally has not exhausted its administrative remedies. Judge Lewis found the impending reissue decision will bind neither Bally nor the Illinois trial court and does not threaten such irreparable

harm as justifies an injunction. Accordingly, the court dismissed the suit. Bally appeals.

## II

The reissue process traditionally has provided a mechanism whereby an inventor who, through error and without any deceptive intention, has been granted a defective patent, may obtain a valid patent conforming to the true scope of his invention.[2] Ordinarily, the patentee submits his previously issued patent, 37 C.F.R. § 1.178, and files an affidavit stating the reason he believes it to be wholly or partly invalid, 37 C.F.R. § 1.175. He also is required to file a reissue application containing the entire specification and claims of the original patent, with proposed deletions bracketed and proposed additions underlined, 37 C.F.R. § 1.173. A patent examiner reexamines all claims included in the reissue application as if they were presented in an original application, 37 C.F.R. § 1.176. If he finds the previously issued patent "wholly or partly inoperative or invalid", 35 U.S.C. § 251, the examiner determines whether the applicant is entitled to a patent under the reissue claims. If a reissue is refused, whether because the previously issued patent is entirely valid or because the reissue claims do not describe a patentable invention, the original patent will be returned to the applicant upon his request, 37 C.F.R. § 1.178. Reissue patents are entitled to the same presumption of validity as original patents. *National Rolled Thread Die Co. v. E. W. Ferry Screw Products, Inc.*, 541 F.2d 593, 597 (6th Cir. 1976).

In January 1977, the Commissioner adopted a new regulation which permits a

---

**2.** 35 U.S.C. § 251 provides:

Section 251. Reissue of defective patents. Whenever any patent is, through error without any deceptive intention, deemed *wholly or partly inoperative or invalid*, by reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such

patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue. (Emphasis added.)

patentee to use the reissue process to obtain an advisory opinion as to the validity of his patent. Under 37 C.F.R. § 1.175(a)(4)[3] a patent owner may have new prior art considered by the PTO in a reissue proceeding without making any changes in his original claims or specification. The official commentary indicates that the new rule was intended to allow a patentee to file a reissue application even if he believes his patent is valid over prior art not previously considered by the PTO. 42 Fed.Reg. 5588 (1977). Since reissue applications can be granted only where the original patent is wholly or partly inoperative or invalid, 35 U.S.C. § 251, filing a reissue application subjects the original patent to the patent examiner's expert determination of validity in light of the new prior art. A reissue rejection, whether based on the finding of the examiner that the original patent is entirely valid or on his finding that the reissue claims do not describe a patentable invention, is purely advisory.[4] The examiner's expert opinion may carry substantial weight in an infringement action involving the same patent and prior art.[5]

Bally sought to bolster its position in the Illinois litigation by filing an application under the advisory reissue procedures of the PTO. Bally's reissue claims and specifications are identical to the claims and specification of its patent No. 4,093,232. Bally hoped the examiner would reject the reissue application as lacking statutory basis, namely total or partial invalidity of the original patent. The basis for the rejection then would become part of the record of prosecution of the reissue application, 42 Fed.Reg. 5588 (1977), and could be urged upon the court in the Illinois litigation as support for the validity of the patent.

Recognizing that a PTO decision on validity may carry substantial weight with the Illinois district court, and hoping to influence that decision in their favor, the infringement defendants filed protests to Bally's reissue application. They urged that Bally's application should be denied because the reissue claims, which are identical to the original claims, do not describe a patentable invention. As support for this proposition, the protestors cited evidence that several of Bally's competitors previously had conceived and reduced to practice electronic game mechanisms which substantially anticipated the invention described in Bally's patent. According to the protestors, these prior inventive activities rendered Bally's invention unpatentable under 35 U.S.C. §§ 102(g) and 103. Like Bally, the protestors hope the examiner will deny the reissue application on a ground that supports their position in the Illinois litigation.

One problem in this case arises from the fact that the evidence the protestors want

---

3. 37 C.F.R. § 1.175(a)(4) provides that a patentee may file a reissue application:
   (4) When the applicant is aware of prior art or other information relevant to patentability, not previously considered by the Office, which might cause the examiner to deem the original patent wholly or partly inoperative or invalid, particularly specifying such prior art or other information and requesting that if the examiner so deems, the applicant be permitted to amend the patent and be granted a reissue patent.

4. In *McCormick Harvesting Machine Co. v. Aultman*, 169 U.S. 606, 18 S.Ct. 443, 42 L.Ed. 875 (1898) the Supreme Court held only the federal courts have jurisdiction to invalidate a previously issued patent. The Court said "until the amended patent shall have been issued the original stands precisely as if a·reissue had never been applied for . . . and must be

returned to the owner upon demand." 169 U.S. at 610, 18 S.Ct. at 444.
   On the other hand, neither the courts nor infringement defendants are bound by a reissue determination that a previously issued patent is valid. *See* 35 U.S.C. § 282. *Cf. Allen v. Culp*, 166 U.S. 501, 505, 17 S.Ct. 644, 645, 41 L.Ed. 1093 (1897).

5. The PTO's commentary accompanying its new rule recognized that "During litigation, a federal court may, if it chooses, stay proceedings to permit new art to be considered by the Office." 42 Fed.Reg. 5588 (1977). *See also United States v. Marifarms, Inc.*, 345 F.Supp. 858, 861–63 (D.Del.1972). The District Court for the Northern District of Illinois stayed Bally's infringement actions pending a PTO ruling on the reissue application, presumably because the court felt the views of the examiner on the validity of the patent might be helpful.

the examiner to consider in the reissue examination consists of internal corporate memoranda and deposition testimony tending to show prior inventive activities by strangers to the protest. Bally distinguishes between "prior art documents", which it says are the only evidence that may be considered in a reissue examination, and other types of proof, including the protestors' supporting documents. According to Bally, prior art documents are of three types: (1) other patents, 35 U.S.C. § 102(e); (2) printed publications that describe the patented invention and were published before the reissue applicant's date of invention or more than a year before he filed his original application, 35 U.S.C. §§ 102(a) and (b); and (3) the reissue applicant's written admissions that something is prior art as to his claims, *In re Bass*, 474 F.2d 1276, 1286–87 (CCPA 1973). These documents may be considered in reissue examinations, Bally says, because they "render a claim or claims invalid without more under [§§ 102(a), (b) or (e)] or § 103". In other words, they are conclusive against patentability. By contrast, other types of evidence can only contribute to meeting the burden of persuasion that alleged prior inventive activities actually took place; only those activities, not the documents themselves, can render the claims invalid under §§ 102 and 103. In order to consider other types of evidence, the patent examiner would have to weigh credibility and judge the preponderance of the evidence rather than merely determine technical issues of overlap among competing claims and specifications.

Reissue examinations, however, are ex parte proceedings, and most examiners are not skilled in the technical rules of evidence. Therefore, Bally says, such questions of proof must be left to adversary proceedings such as infringement actions, interferences and public use proceedings. Bally wants the court to halt processing of the reissue application until the PTO promulgates rules limiting the evidence an examiner may consider in a reissue proceeding.

### III

Bally's suit is premature. The Assistant Commissioner's order, directing the examiner to proceed with his consideration of Bally's reissue application, is interlocutory. *Cf. Klein v. Commissioner of Patents of the United States*, 474 F.2d 821, 824–25 (4th Cir. 1973) (Commissioner's refusal to dissolve an interference is interlocutory); *Lee Pharmaceuticals v. Kreps*, 577 F.2d 610, 619 (9th Cir. 1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979) (Commissioner's order refusing to consider abandoned patent applications as evidence or prior art is interlocutory); *Phillips Petroleum Company v. Brenner*, 383 F.2d 514, 517 (D.C.Cir.1967) (refusal to dissolve interference); *Doyle v. Brenner*, 383 F.2d 210, 211 (D.C.Cir.1967) (Commissioner's order denying review of examiner's refusal to declare an interference is interlocutory); *Dueltgen v. Parker*, 579 F.2d 638, 639 (CCPA 1978) (refusal to dissolve interference). Since there has been no final agency action, Bally's reliance on 5 U.S.C. § 704 [6] (Administrative Procedure Act) as authority for its suit is misplaced.

The question Bally has raised is not ripe for decision. The allegedly illegal procedure has not yet been applied to Bally's reissue application. Even if the PTO pro-

---

6. 5 U.S.C. § 704:
§ 704. *Actions reviewable*
Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review: A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

ceeds with the examination under its present rules, the entire dispute will become moot if the examiner finds Bally's original patent valid in light of the protestors' evidence. The Supreme Court has noted the ripeness doctrine is designed:

> . . . to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by challenging parties. *Abbott Laboratories, Inc. v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

*See Lee Pharmaceuticals v. Kreps, supra*, 577 F.2d at 618–19. As yet Bally has suffered no legal wrong nor felt in any concrete way adverse effects from the order of the Assistant Commissioner. "[J]udicial intervention at the initial stage of the determination of the question of priority of intervention would disrupt the orderly administration of the Patent Office." *Klein v. Commissioner of Patents of the United States, supra*, 474 F.2d at 825.

No matter how this appeal is viewed, Judge Lewis made the proper disposition of the suit by dismissing it. As he expressed it, he refused to "meddle" prematurely in the PTO's examination of the reissue application. By dismissing the suit, he also refrained from "meddling" in the litigation pending in the Northern District of Illinois, where the issue of the validity of the patent in suit is to be decided.[7]

The judgment of the district court is affirmed.

---

**7.** Another problem is involved in this case. Since it is not before us, it will not be decided on this appeal. Bally's reissue difficulties may never present a case or controversy sufficient to invoke the jurisdiction of the federal courts. As the district court noted in holding that Bally had not demonstrated any threat of irreparable harm, the examiner's reissue determination will have no legal effect on anyone. The Illinois district court may find the decision of the examiner helpful, but it will not be bound thereby. *Cf. Allen v. Culp, supra*, 166 U.S. 501, 505, 17 S.Ct. 644, 645, 41 L.Ed. 1093 (1897). The PTO has no power to annul the original patent, even if the examiner believes it invalid. *McCormick Harvesting Machine Co. v. Aultman, supra*, 169 U.S. 606, 608–09, 18 S.Ct. 443, 444, 42 L.Ed. 875 (1898). Bally may obtain return of the patent at any time merely by requesting it. 37 C.F.R. § 1.178. It is difficult to see what legal harm Bally would suffer even from an adverse determination on its reissue application.

A similar case or controversy problem might prevent Bally from ever obtaining review of the Assistant Commissioner's decision. Because the reissue claims are identical to the original claims, it appears that the reissue application necessarily will be denied. Should the examiner find the original patent valid, there will be no statutory basis for granting the reissue application (35 U.S.C. § 251); should he find any of the original claims invalid, he presumably would find the identical reissue claims invalid and reject the reissue application on that ground. Should Bally wish to appeal, it will have to argue that the examiner's rejection was correct but based on erroneous reasoning and improper evidence. It may be that PTO's Board of Appeals can consider such an appeal. It appears the Board of Appeals has no power to overrule the procedural rulings of the Commissioner. *See Doyle v. Brenner, supra*, 383 F.2d at 211 n. 5. Bally's only recourse would be an appeal to the Court of Customs and Patent Appeals, 35 U.S.C. § 141, or a civil action in the district court, 35 U.S.C. § 145, both of which would be precluded if there were no case or controversy.

In essence, the PTO has established an advisory proceeding and Bally now is asking the federal courts to interfere. If the underlying proceeding is purely advisory, how can disputes over procedural matters be any more concrete?

We emphasize that the appealability issue is not before us, and we express no opinion on it.