**DRESSER INDUSTRIES, INC., Plaintiff,**

v.

**FORD MOTOR COMPANY and Eagle Lincoln-Mercury, Inc., Defendants.**

**Civ. A. No. CA3–80–1470–G.**

United States District Court, N. D. Texas, Dallas Division.

Oct. 15, 1981.

John K. DeLay, Jr., Hugh L. Steger, Storey, Armstrong, Steger & Martin, Dallas, Tex., and Joseph M. Fitzpatrick, Lawrence F. Scinto, Fitzpatrick, Cella, Harper & Scinto, New York City, for plaintiff.

Robert F. Middleton, Ronald W. Kessler, Meyers, Miller, Middleton, Weiner & Warren, Dallas, Tex., for defendants; Hal D. Cooper, Jones, Day, Reavis & Pogue, Cleveland, Ohio, Robert E. McCollum, Clifford L. Sadler, Keith Zerschling, Dearborn, Mich., of counsel.

MEMORANDUM ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

Currently before the Court are the Motions of Defendants Ford Motor Company and Eagle Lincoln-Mercury, Inc. (collective-

ly "Ford") for an order compelling Plaintiff, Dresser Industries, Inc., to apply to the Patent and Trademark Office ("PTO") for "reissue" of the patents in suit and to dismiss this case. Dresser has also filed a second Motion for a Stay of this litigation, pending a determination by the PTO of Dresser's current application for a "reexamination" of its patents.

Dresser commenced this action on November 5, 1980, alleging that Defendants had infringed two of its patents involving sonic exhaust recirculation valves. In answer to Dresser's complaint and initial interrogatories, Defendants countered that the two Dresser patents were invalid because they were anticipated and obvious in light of prior art not disclosed to, or considered by, the PTO, and because of certain material omissions and misrepresentations made by Dresser when prosecuting its original patent application.

On July 1, 1981, Dresser filed an application for "reexamination" of its patents, pursuant to the newly adopted reexamination statute, 35 U.S.C. §§ 301–307 (effective July 1, 1981), and implementing rules set forth at 37 C.F.R. §§ 1.501–1.570, 46 Fed. Reg. 29187 (May 29, 1981). Specifically, Dresser requested reexamination in light of two pieces of prior art not previously considered by the PTO; the Converse Patent No. 3,524,344, and a printed publication of the Fox Valve Development Co. advertising its throttling valves. In its answer to Plaintiff's first set of interrogatories, Ford cited both these materials as prior art invalidating Dresser's patent. On July 8, 1981, Dresser requested a stay of these proceedings pending reexamination of its patents, which request was denied by the Court during a conference held on July 10, 1981. At that conference, Dresser announced it was amenable to dismissal of this action, without prejudice, on condition that Defendants would agree not to file suit for a declaratory judgment while reexamination proceedings were pending before the PTO. Defendants declined to agree to a dismissal under this condition. On August 27, 1981, the PTO issued an order granting Dresser's request for reexamination. Thereafter, on September 14, 1981, Dresser filed a renewed motion for a stay.

In the interim, on July 30, 1981, Ford moved for an order compelling Dresser to file an application for "reissue" of its patents, pursuant to 35 U.S.C. §§ 251–256 and PTO rules set forth at 37 C.F.R. § 1.171 *et seq.*, and for dismissal of this action pending a reissue decision. Ford argues that the PTO's reissue procedures are both more fair and appropriate than reexamination because they allow participation by patent contestants and because the examiner's determination of validity under 37 C.F.R. § 1.175 is to be based on the totality of factors affecting patentability, not prior art and printed publications alone. In contrast, Ford emphasizes, the new reexamination procedures commenced by Dresser are *ex parte*, and patentability is reexamined primarily in light of the specific prior art cited by the patentee in its request for reexamination—here the Converse patent and Fox publication. Ford has announced its willingness to agree not to commence a declaratory judgment action should this case be dismissed, but only if Dresser initiates an application for reissue rather than reexamination. Ford is not willing to waive its legal right to sue for a declaratory judgment while Dresser prosecutes its application for an *ex parte* reexamination of its patent in light of some, but not all, of the prior art brought to its attention. Ford further opposes Dresser's request for a stay pending reexamination on grounds that it would unfairly delay this case while doing little to advance its ultimate outcome.

Ford's position has much to commend it. From the perspective of full and fair consideration of the patent validity issue, the reissue procedure is manifestly superior to reexamination. First, the scope of the PTO's inquiry into patentability is broader under reissue than under reexamination. According to Rule 1.175 of the Rules of Practice in Patent Cases, 37 C.F.R. § 1.175, applications for reissue may encompass questions of invalidity involving defective specifications, overnarrow or overbroad claims by the patentee, prior art or *other*

*information* relevant to patentability which has not previously been disclosed to the PTO, and other errors or possible errors occurring during the original patent examination. Moreover, under Rule 1.176, 37 C.F.R. § 1.176, the reissue application is to be examined "in the same manner as original applications, subject to the rules relating thereto." Such examination includes a "thorough examination of the available prior art relating to the subject matter of the invention . . . and . . . the patentability of the invention as claimed," as well as "compliance of the application with the statutes and rules." *See* 37 C.F.R. § 1.104.

In contrast, under the reexamination statute, 35 U.S.C. § 302 *et seq.* and Rule 1.552(a)–(c) of the Rules Relating to Reexamination, patent claims will be reexamined solely on the basis of patents or printed publications. Only amended or new claims will be examined for compliance with the broader requirements for patentability contained in 35 U.S.C. § 112 and Rules 1.71–1.79 of the Rules of Practice in Patent Cases, 37 C.F.R. §§ 1.71–1.79. Subsection (c) of Rule 1.552 specifically states that questions unrelated to prior art will not be resolved in reexamination proceedings.[1] Thus, as Ford claims, the PTO will not consider in the reexamination process issues such as fraud on the Patent Office, prior public use or sale, inadequacy of the disclosure and the factual basis for the invention claimed, all of which have been raised as defenses in this case.

The reissue rules also provide opportunities for varying degrees of participation by contestants which are not available under the rules for reexamination. Indeed, after rulemaking hearings on its reexamination procedures, the Office expressly rejected suggestions relating to more participation by third parties. It stated that "the essentially *ex parte* nature of the reexamination

proceedings was believed to be in keeping with the spirit and intent of the statute . . . ." 26 Fed.Reg. 29176 (May 29, 1981). Where, as here, a patentee has filed an application for reexamination, the only access to the process allowed third parties is to submit, up to the date reexamination is granted, citations to prior art which are believed to be pertinent to the patent and patentability. Even where a party other than the patentee, requests reexamination,[2] the "requester" may only file an initial statement in support of reexamination and, if reexamination is granted, a reply to the patent owner's statement, *if* a reply is filed. *See* 37 C.F.R. § 1.535. No other submission from the reexamination requester will be considered, *id.*, and Rule 1.560(a) expressly provides that requests by reexamination requesters to participate in interviews with examiners will not be granted.

In contrast, third-party "protestors" who are involved in pending patent litigation are permitted to participate in all stages of reissue proceedings and to proffer "any information" which, in the protestor's opinion, would make the grant of a patent improper. *See generally*, 37 C.F.R. § 1.219; Manual of Patent Examining Procedure §§ 1901–1922 ("PTO Manual") (1980). The PTO Manual provides that, where a court has suspended litigation for consideration of a related application by the PTO and has expressed its desire for protestor participation, the PTO will permit a protestor to submit materials generated in the litigation, *see* § 1901.02, to file written comments, *see* § 1901.07(b), and to participate in interviews between the reissue applicant and the examiner, *see* § 1902. In effect, the reissue procedures invite litigants fully to air their positions respecting patentability and permit the PTO to make a determination of patentability based upon a far broader scope of relevant information than is possible under the reexamination procedure.

---

1. When promulgating its rules for reexamination, the Office explained that:

   The suggestions that the rules be broadened to include other issues have not been adopted since the other issues would unduly complicate the proceedings, and raise questions whether such issues can be considered under

Pub.L. 96–517, 94 Stat. 3015. *See* 26 Fed. Reg. 29176 (May 29, 1981).

2. New Rule 1.510 sets forth procedures whereby *any* person may request reexamination upon payment of a fee, thereby implementing 35 U.S.C. § 302.

Dresser argues nevertheless that the streamlined reexamination procedure is more appropriate in this case because reexamination proceedings, including appeals to the Board of Appeals, are to be conducted with "special dispatch." *See* 37 C.F.R. § 1.550. Whether reexamination applications will be resolved with greater dispatch than reissue applications filed in the midst of patent litigation, however, is unclear. Under 37 C.F.R. § 1.102, reissue applications arising out of stayed litigation are to be given "priority" over initial applications and other reissue applications.[3] In such cases, the PTO will also entertain petitions under 37 C.F.R. § 1.183 to waive the two-month delay period provided by 37 C.F.R. § 1.176 before which reissue applications will be considered by the PTO. To expedite reissue, protestors involved in litigation are directed to mark all submissions boldly with the notation "REISSUE LITIGATION," and to handcarry or mail all documents to a special repository, "in order to insure prompt receipt and avoid any unnecessary delay." *See* PTO Manual § 1901.03.

A speedy resolution of Dresser's pending request for reexamination is by no means certain. All that has transpired to date is that the examiner has granted Dresser's request for reexamination of its patents. Under 37 C.F.R. § 1.535, Dresser next must set forth its position on the prior art submitted by October 27, 1981. However, there is no time period specified in the rules, or in practice, dictating when a ripe application for reexamination will be considered by the PTO. When reexamination is concluded, the examiner will take initial "action" and set a time period of not less than 30 days in which Dresser must respond. *See* 37 C.F.R. § 1.112. After Dresser responds, the application will remain on the examiner's docket for an indeterminent period pending further examination. If the claims are denied, Dresser may initiate at least a second cycle of response and reconsideration, and possibly "repeated" reconsideration, until the examiner indicates his

action is "final." *Id.* After the examiner has taken "final action," further amendments and interviews are permitted by the reexamination rules. *See* 37 C.F.R. § 1.116. Finally, after a second rejection or unfavorable final action, if any, Dresser may exercise its right to appeal. Based on the PTO's rules, therefore, Dresser's claim that reexamination is more expeditious than reissue is conjecture.

Ford does not contend that reissue would be any faster than reexamination. Ford correctly notes, however, that the progress already made by the Patent Office on Dresser's reexamination request would not be lost were Dresser to seek reissue now. New Rule 1.565(b), 37 C.F.R. § 1.565(b), gives the Commissioner authority to stay reexamination for a postfiled reissue application. It also provides that if reexamination is stayed, the reissue proceeding shall take into account prior art already submitted for reexamination. Thus, since final action by the PTO on Dresser's pending reexamination cannot reasonably be anticipated in the near future, an expedited reissue proceeding might not unduly prolong the delay already brought about in this case.

▮ Whatever time savings might accrue from proceeding under the new reexamination route must be weighed against its limited utility in comparison with reissue. The major benefit of staying litigation pending reconsideration of a patent under either procedure is that it affords the Court the assistance of the Patent Office's specialized expertise on technical questions of validity. *Cf. Sheller Globe Corp. v. Mobay Chemical Corp.*, 204 U.S.P.Q. 1052 (E.D.Mich.1980). During infringement litigation, patents are entitled to a statutory presumption of validity. 35 U.S.C. § 282. This presumption is premised upon the acknowledged expertise of the PTO, *Parker v. Motorola, Inc.*, 524 F.2d 518, 521 (5th Cir. 1975) *cert. denied* 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799

---

**3.** In the summer of 1979, the Commission reaffirmed that reissue applications in litigation would be given priority in the Patent Office and

would be processed "immediately." 983 Official Gazette, Patent and Trademark Office 24 (June 26, 1979).

(1976) and is bolstered where newly sur-faced prior art receives favorable considera-tion by the Commissioner before litigation ensues. *See Corometrics Medical Systems, Inc. v. Berkely Bio-Engineering, Inc.*, 193 U.S.P.Q. 467, 472 (N.D.Cal.1977); E. Wal-terschied and K. Cage, "Jurisdiction of the Patent and Trademark Office to Consider the Validity of Issued Patents," 39 Fed.B.J. 37, 42–45 (1980); F. B. Lacey, "A Federal District Judge's Views on Patent Reissue, Protest and Duty of Disclosure," 60 J.P.O.S. 529, 532 (September, 1978). Review by the PTO has the potential to produce collateral benefits as well. The outcome of reexami-nation or reissue may encourage a settle-ment, thereby alleviating the need for fur-ther judicial proceedings. Where PTO deci-sions result in a finding of invalidity, or a substantial narrowing of the patent claims, the infringement suit may quickly end.

■ It is apparent, however, that the reissue procedure, because of its broader scope of review and opportunity for partici-pation by protestors, would more likely re-sult in realization of the potential benefits of mid-litigation review by the PTO than would reexamination.[4] This is particularly true under the circumstances of this case where Ford complains Dresser has unfairly abused, and will again abuse, the Patent Office's *ex parte* examination processes. Ford argues that Dresser has misrepresen-ted both the characteristics of the device disclosed in the Johnson Patent and the significance of the cone angles specified in its own patents, has ignored the angles of operation contemplated by the Converse patent, and has withheld from the examiner certain testimony of the inventor which Ford believes is material to patentability. These contentions, and others, could be aired by Ford during the reissue process but will not be presented along the reexamina-tion route. Complete consideration of Ford's contentions by the examiner will strengthen the presumption of validity at-taching to any Dresser claims approved by

the PTO after reissue. Should Dresser's patent claims be sanctioned after an *ex parte* reexamination, however, the resulting presumption of validity will lack the temper of a confrontation with Ford's objections. *Cf. Gaddis v. Calgon Corp.*, 506 F.2d 880, 885 (5th Cir. 1975). In sum, from the stand-point of overall judicial economy, a reissue decision promises substantial savings of time and effort where a reexamination de-cision promises few dividends.

Whatever its equitable appeal, the power of a district court to compel a litigant who has filed an application for reexamination to seek reissue instead must be found. This question of authority is apparently a ques-tion of first impression. The logical start-ing point for decision is an examination of those cases addressing judicial authority to order an unwilling litigant to apply for reissue as a condition to maintaining an action for infringement. It is worth noting at the outset, however, that such cases are not dispositive of the question posed here: ordering a party to apply for reissue after it has elected to suspend infringement litiga-tion to initiate a reexamination on its own is not the same as compelling an unwilling party to return to the PTO after it has chosen an exclusively judicial forum to re-solve its infringement claims.

Judicial consensus is lacking on the au-thority of a court to compel an unwilling patent owner to apply for reissue. In the majority of cases where a motion to compel has been filed, however, courts have either ordered reissue, *see Milliken Research Corp. v. Dan River, Inc.*, 206 U.S.P.Q. 1028 (W.D. Va.1980); *Slimfold Mfr. Co., Inc. v. Kin-kead Industries, Inc.*, 206 U.S.P.Q. 1012 (N.D.Ga.1980); *Coe Laboratories, Inc. v. St. Charles Mfr. Corp.*, 206 U.S.P.Q. 1014 (N.D. Ill.1980); *Sheller Globe Corp. v. Mobay Chemical Corp.*, 204 U.S.P.Q. 1052 (E.D. Mich.1980); *In re Yarn Processing Patent Validity Litigation* 448 P.T.C.J. 7 (S.D.Fla., September 7, 1979); *Choat v. Rome Indus-*

---

4. The 1977 amendments to the reissue rules which liberalized protester participation were specifically intended to permit the PTO to lend its expertise in aid of the jurisdiction of the

courts. *See* Discussion, *infra* at pp. 310–311. *See also* E. Walterscheid and K. Cage, *supra*, at 42–45.

*tries, Inc.*, 480 F.Supp. 387 (N.D.Ga.1979); *Lee-Boy Mfg. Co. v. Puckett*, 202 U.S.P.Q. 573 (N.D.Ga. September 15, 1978); *K–Jack Engineering Co. v. Pete's Newsrack, Inc.*, 205 U.S.P.Q. 696 (C.D.Cal. June 6, 1978); *Alpine Engineering, Inc. v. Automated Building Components, Inc.*, 367 P.T.C.J. A–12 (S.D.Fla., February 1, 1978), or at least have acknowledged the court's discretion to order a litigant to initiate or participate in reissue proceedings under appropriate circumstances, *see A. B. Dick Co. v. Burroughs Corp.*, No. 78–C–75 (N.D.Ill. June 13, 1980); *Goodwall Construction Co., Inc. v. Beers Construction Co.*, 503 F.Supp. 153 (N.D.Ga.1980). Two courts, however, have expressly held that there is no judicial authority, either statutory or inherent, to order an unwilling patent owner to seek reissue. *See Johnson & Johnson v. Wallace A. Erickson & Co.*, 627 F.2d 57 (7th Cir. 1980); *Bielomatik Leuze & Co. v. Southwest Tablet Mfg. Co.*, 204 U.S.P.Q. 226 (N.D.Tex. August 22, 1979). The decision in *Antonious v. Kamata-Ri & Co.*, 204 U.S.P.Q. 294 (D.Md. October 2, 1979), a case involving prior public use or sale and not undisclosed prior art is ambiguous: the court simultaneously questions, in dicta, whether authority to compel reissue would exist where invalidity is premised on undisclosed prior art, while at the same time suggesting that, if the benefits of a PTO examination outweigh any prejudice to the parties, an order compelling reissue would be within the court's discretion.

Despite their greater number, the cases favoring compelled reissue where an examination by the Patent Office would be beneficial shed little light on the source of judicial authority to do so. Those courts directing reissue have claimed "discretionary" authority or an "inherent" power to compel where the benefits of review by the Patent Office outweigh the prejudice to the parties. In *Bielomatik Leuze & Co. v. Southwest Tablet Mfg. Co., supra*, however, the district court held, without explanation, that it lacked authority to compel involuntary reissue, apparently based on an assumption that the PTO's reissue regulations were "designed" only for voluntary applicants.

Reversing a reissue order in *Johnson & Johnson, Inc. v. Wallace A. Erickson & Co., supra*, the Seventh Circuit raised constitutional objections to compelled reissue, though it expressly declined to reach the questions it raised. The Court principally noted that an order compelling reissue would deprive a patentee of his property without due process of law because the patentee was required to surrender his patent rights to the PTO when applying for reissue. *See* 35 U.S.C. § 251. If a power to compel were exercised, the Court concluded, it would be a taking of property without due process of law and, if discretionary, would raise problems of equal protection. *Id.*, 627 F.2d at 61.

■ According to the express terms of the reissue statute, 35 U.S.C. § 252, and Rule 1.178 of the Rules of Practice in Patent Cases, 37 C.F.R. § 1.178, however, the original patent is *not* surrendered to the PTO when an application for reissue is filed. Rather, the application need only be accompanied by an "offer" to surrender the original patent, which becomes effective *if* a reissued patent is granted. Rule 1.178 expressly states that, "[i]f a reissue be refused, the original patent will be returned to the applicant upon his request." *Id.* Thus, the original patent is surrendered only if, and when, the application for reissue has been accepted and the PTO, upon payment of a fee, causes the original patent to be reissued in amended form.

■ This has been settled law for over eight decades. In *Allen v. Culp*, 166 U.S. 501, 505, 17 S.Ct. 644, 645, 41 L.Ed. 1093 (1897), the Supreme Court, construing the predecessor to 35 U.S.C. § 252, explained that the terms of the conditional surrender "were obviously inserted for the purpose of preventing the surrender taking immediate effect, and to postpone its legal operation until the patent should be reissued." Contrary to the Seventh Circuit's suggestion, the Court made clear that the patentee's property right is not jeopardized by apply-

ing for reissue.[5]  *Id.; accord, McCoy v. Pfeiffer*, 133 F.2d 913 (C.C.P.A., 1943).  The reissue procedure thus traditionally has provided a mechanism whereby, with little risk, an inventor who has been granted a defective patent, through error and without deceptive intention, may obtain a valid patent conforming to the true scope of his invention.  *See Bally Mfg. Corp. v. Diamond*, 629 F.2d 955, 957 (4th Cir. 1980).  If reissue is refused, either because the previously issued patent is entirely valid or because the reissue claims do not describe a patentable invention, the patentee retains all property rights in his existing patent, whatever they are worth.  And if reissue is granted, the patentee retains all legal rights previously conferred, while gaining new property rights in the reissue patent for the balance of the original patent grant.[6]  *See Shull Perforating Co. v. Cavins*, 94 F.2d 357 (9th Cir. 1938); *American Telephone & Telegraph Co. v. Milgo Electronic Corp.*, 416 F.Supp. 951, 953 (S.D.N.Y.1976).

Recent changes in the reissue rules eliminated any remaining elements of risk to the reissue applicant.  In 1977, the Commissioner promulgated regulations permitting the reissue procedure to be used to obtain an advisory opinion on a patent's validity.  Under 37 C.F.R. § 1.175(a)(4),[7] a patent owner may apply for reissue without declaring any changes in his original claims or specifications.  According to the official commentary, the new rule was intended to make possible PTO consideration of new prior art even if the patentee believes his patent is valid over prior art not previously considered in the original examination.  *See* 42 Fed.Reg. 5588 (1977).  As the Fourth Circuit noted in *Bally Mfg. Corp. v. Diamond*, 629 F.2d 955, 958 (4th Cir. 1980):

> Since reissue applications can be granted only where the original patent is wholly or partly inoperative or invalid, 35 U.S.C. § 251, filing a reissue application subjects the original patent to the patent examiner's expert determination of validity in light of the new prior art.  A reissue rejection, whether based on the findings of the examiner that the original patent is entirely valid or on his finding that the reissue claims do not describe a patentable invention, is purely advisory.

Given the patentee's retention of existing property rights under the reissue statute, 35 U.S.C. § 252, and the advisory character of a reissue determination under Rule 1.175(a)(4), the Seventh Circuit's suggestion that a discretionary order compelling reissue might result in a deprivation of property, or a denial of equal protection, without due process of law is not persuasive.  *Cf. Goodwall Construction Co. v. Beers Construction Co., supra*, 503 F.Supp. at 154 (reaffirming a district court's power to compel reissue despite *Johnson & Johnson, supra*.)

The due process red-herring begins to glow even brighter when one considers the

---

**5.**  The Court explained:

> When a patent is thus surrendered, there can be no doubt that it continues to be a valid patent until it is reissued, when it becomes inoperative; but if a reissue be refused, it is entirely clear that the surrender never takes effect, and the patent stands as if no application had ever been made for a reissue. . . .  If it were otherwise, every patentee who applies for a reissue would do so at the peril, not only of having his application refused, but of losing what he already possessed.  This was the very contingency the act of 1870 was designed to provide against.  *Id.*

**6.**  35 U.S.C. § 252 provides, in part, that:

> "every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if originally granted in such amended form,"

and "insofar as the claims of the original and reissued patent are identical, such surrender shall not affect any action pending nor abate any cause of action then existing. . . ."  *See also, American Telephone & Telegraph Co. v. Milgo Electronics Corp., id.* 416 F.Supp. at 953.

**7.**  37 C.F.R. § 1.175(a)(4) provides that a patentee may file a reissue application . . .

> When the applicant is aware of prior art or other information relevant to patentability, not previously considered by the Office, which might cause the examiner to deem the original patent wholly or partly inoperative or invalid, particularly specifying such prior art or other information and requesting that if the examiner so deems, the applicant be permitted to amend the patent and be granted a reissue patent.

possible effect on Dresser's patent rights of an adverse decision after "reexamination." Pursuant to 37 C.F.R. § 1.570(d), the PTO may issue a reexamination certificate which "cancels all the claims of a patent." That section further provides that "no further office proceedings will be conducted with regard to [the cancelled] patent or any reissue applications or reexamination requests relating thereto." [8] Having elected to run the risks of an unfavorable reexamination, Dresser's complaint that an order directing reissue will further imperil its property rights has a hollow ring.

Neither can it be argued here that compelled reissue unfairly deprives Dresser of its right to a jury trial. Dresser's right to a trial by jury in the enforcement of any reissued patent remains unimpaired. And unlike those cases where an unwilling patentee has been ordered to file an application for reissue as a condition to maintaining an infringement action, Dresser, on its own accord, has chosen to return to the Patent Office for a reexamination after filing suit in this court. *Cf. American Telephone & Telegraph Co. v. Milgo Electronics Corp., id. passim.* By ordering Dresser to file an application for reissue now, the Court would be sending Dresser to a forum of its own choosing, albeit with opportunities for protestor participation possibly not as advantageous to Dresser as *ex parte* reexamination. Finally, the right to trial by jury in this Court is not lost because the infringement litigation can be stayed pending the decision by the PTO.[9] *See, e.g. Sheller Globe Corp. v. Mobay Chemical Corp.,* 204 U.S.P.Q. 1052 (E.D.Mich.1980) and cases cited *supra* at pp. 308–309. And, as previously discussed, Dresser's argument that reissue proceedings will cause substantially greater delay than reexamination is conjectural. To be weighed against further postpone-

ment of Dresser's right to a jury trial, if any, is the avoidance of unnecessary duplication of judicial time and agency effort which may result from evaluation of Ford's claims by the Patent Office; claims which will only be considered completely under the PTO's reissue rules. The Court may provide for periodic review of the reissue proceedings to insure adequate progress. *See, e.g. Lee-Boy Mfg. Co., Inc. v. Puckett,* 202 U.S.P.Q. 573 (N.D.Ga.1978).

Constitutional objections aside, the main ground for denying judicial power to compel reissue in *Johnson & Johnson, Inc. v. Wallace A. Erickson & Co., supra,* and *Bielomatik Leuze & Co. v. Southwest Tablet Mfg. Co., supra,* was the lack of statutory authority. In *Johnson & Johnson,* the Seventh Circuit summarily held that neither Congress nor the Commissioner of patents had authorized anyone other than the patent owner to initiate reissue proceedings. Similarly, the Court in *Bielomatik Leuze* stated, without explaining its reasoning, that the reissue procedures were designed only for applicants who voluntarily submit their patents for reconsideration.

These inferences from Congressional silence are not unreasonable, but neither are they persuasive. The reissue statute, 35 U.S.C. § 251, does not declare who may initiate reissue proceedings. The statute simply confers upon the Commissioner the authority to grant a reissued patent under appropriate circumstances. Congress, therefore, did not inferentially preclude patent reevaluation by the Commissioner at the instance of a Court by specifying who could apply for reissue. Second, to conclude that the reissue procedure was "designed" only for applicants who voluntarily submit their patents for reconsideration is to ignore the changes recently made by the Patent Office in the reissue rules.[10] The rule

8. It is the announced position of the Patent Office that, "once all claims have been cancelled from the patent, the patent ceases to be enforceable for any purpose." *See* 46 Fed.Reg. 29181 (May 29, 1981).

9. Since Dresser has requested a stay, it is properly estopped from complaining of denial of its

right to trial by jury as ground for opposing an order directing reissue.

10. The Patent Act of 1952 gave the Commissioner authority to "... establish regulations not inconsistent with law, for the conduct of proceedings in the Patent Office." 35 U.S.C. § 6. The Court of Customs and Patent Appeals has consistently taken the position that

changes in 1977 expressly contemplated use of the reissue procedures to obtain an advisory opinion from the Patent Office on the validity of patents involved in pending federal litigation.[11] *Bally Mfg. Corp. v. Diamond, supra*, 629 F.2d at 958. The fact that the Patent Office amended its rules to permit reissue even if the patentee believes his patent is valid over previously undisclosed prior art, and has since entertained numerous applications for reissue from patentees under compulsion of a court order, belies the court's conclusion in *Bielomatik Leuze* that the reissue rules were "designed" only for voluntary applicants.

■ It also bears note that, when a court orders a litigant to apply for reissue, the Court is not "initiating" reissue proceedings in the PTO itself, as suggested in *Johnson & Johnson, supra*. Equity traditionally acts *in personam*. *See Penn v. Lord Baltimore*, 1 Ves.Sen. 444 (1750); W. W. Cook, The Powers of Courts of Equity, 15 Colum.L. Rev. 37, 106 (1915); O. Fiss, *Injunctions*, pp. 703–713 (1972). Thus, while a court may lack power to initiate or restrain proceedings in another tribunal, it possesses inherent equitable powers to compel a party within its jurisdiction to prosecute, or refrain from prosecuting, related actions in other jurisdictions where necessary to aid its jurisdiction, protect or effectuate its processes, or prevent wasteful and useless duplication of time and effort. *Cf. General Atomic Co. v. Felter*, 434 U.S. 12, 19–21, 98 S.Ct. 76, 79–80, 54 L.Ed.2d 199 (1977) (Rehnquist, J. *dissenting*); *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *General Tire & Rubber Co. v. Watkins*, 373 F.2d 361 (4th Cir.), *cert. denied* 386 U.S. 960, 87 S.Ct. 1031, 18 L.Ed.2d 109 (1967); *Archibald v. Cinerama Hotels*, 15 Cal.3d 853, 126 Cal.Rptr. 811, 544 F.2d 947 (1976).

■ The exercise of inherent power here is not unprincipled. Absent Congressional mandate, a district court, by necessity, is thrown back upon its inherent equitable jurisdiction as a source of power to compel reissue. This is nothing new, nor adventurous. Once vested with subject matter jurisdiction, district courts traditionally possess broad and inherent powers "over their own processes, to prevent abuses, oppression and injustice," *Gumbel v. Pitkin*, 124 U.S. 131, 144, 8 S.Ct. 379, 383, 31 L.Ed. 374 (1888), and to do "substantial justice." *Ownbey v. Morgan*, 256 U.S. 94, 110, 41 S.Ct. 433, 438, 65 L.Ed. 837 (1921). Where, as here, the elements of this Court's subject matter and *in personam* jurisdiction are clearly shown, there can be little doubt as to the Court's discretionary authority to issue orders ancillary to the main suit, to preserve the existing conditions and the subject of the matter before it. *Cf. United States v. United Mine Workers*, 330 U.S. 258, 290, 67 S.Ct. 677, 694, 91 L.Ed. 884 (1947); H. B. Cox, "The Void Order and the Duty to Obey." 16 U.Chi.L.Rev. 86 (1948). The reexamination procedure which Plaintiff now pursues threatens to upset the status quo by foreclosing meaningful pretrial discovery and preparation by Ford and, possibly, by permitting Dresser to introduce new or amended claims concerning the patents in suit.[12] It is within the Court's equitable powers to prevent such disruption, prejudice, and unnecessary delay. If Dresser were willfully to decline to participate in a meaningful way in discovery, no one would deny the Court's power to order compliance on pain of dismissal. *See, National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam); *Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979); Fed.R.Civ.P. 37(b)(2)(C).

---

the Rules of Practice have the force and effect of law when not inconsistent with statute. *See, e.g. Norton v. Curtiss*, 433 F.2d 779, 791 (C.C.P.A.1970); *see also* E. Walterscheid and K. Cage, *supra*, 39 Fed.B.J. at 45–47.

**11.** The PTO stated in the commentary accompanying its new Rule 1.175 that "[d]uring litigation, a federal court may, if it chooses, stay

proceedings to permit new art to be considered by the Office." 42 Fed.Reg. 5588 (1977).

**12.** Any new or amended claims, however, must be limited to the original disclosure and may not enlarge the scope of the claims of the patent. *See* 37 C.F.R. §§ 1.530(d), 1.552(b).

■ Exercising equitable power to compel Dresser to apply for reissue here is fully consistent with the purposes of the 1977 amendments to the reissue rules. Under the authority granted by Congress in the Patent Act of 1952, 35 U.S.C. § 6, the Commissioner has provided a procedure for reissue applications through which, without risk to the patentee, a court may avail itself of the expertise of the Patent Office before time consuming infringement litigation proceeds too far apace. The PTO's rules expressly contemplate use of the reissue procedures for such a purpose, and anticipate a cooperative effort between the court, the agency, and the participants to this end.[13] *See discussion, supra,* at pp. 306, 310; *see also* E. Walterscheid and K. Cage, *supra,* at 40–45. Thus, I concur with the finding of the district court in *Sheller Globe Corp. v. Mobay Chemical Corp.,* 204 U.S.P.Q. 1052 (E.D.Mich.1980) that an order directing reissue is fully consistent with the expressed purposes of the reissue statute. *See also, Slimfold Mfr. Co. v. Kinkead Industries, Inc.,* 206 U.S.P.Q. 1012 (N.D.Ga.1980). I am also convinced that where, as here, a complex technical question such as the relationship between patented valve designs and energy efficiency is at issue, it is within the Court's discretion to obtain an advisory opinion from the Patent Office where it will likely contribute to the avoidance of unnecessary duplication of effort, expense and delay.[14]

■ Last, it must be emphasized that Dresser, not Ford, first invoked this Court's equity powers by requesting a stay. It is the essence of equity to mould each decree to the particulars of the case and to balance the competing interests presented. "The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation … as between competing private claims." *Hecht Co. v. Bowles,* 321 U.S. 321, 329–30, 64 S.Ct. 587, 591–92, 88 L.Ed. 754 (1944). The equities here soundly favor Ford's position. After commencing an action for infringement in this Court, Dresser *sua sponte* returned to the Patent Office for a reexamination to bolster its position in this litigation. It now requests a stay of indeterminent length to prosecute *ex parte* proceedings which will do little to advance the litigation pending in this Court, absent a fair consideration of Ford's claims. The benefits of reexamination has not been shown to be sufficient to warrant the expense of delay. The equally available reissue procedure, however, promises benefits not available through reexamination: benefits which do sum in an amount sufficient to pay the price. Because Ford's objections to patentability will have been fully heard, a reissue decision favorable to Dresser will enhance the presumption of validity of its patents and Ford will be unable to take advantage of other undisclosed prior art or ambiguities to argue that the examiner "overlooked" or "misunderstood" matters pertinent to Dresser's patent claims. *See* F. B. Lacey, *supra,* at 533. Dresser, on the other hand, has demonstrated no prejudice which might result even from an adverse reissue decision. *Cf. Bally Mfr. Corp. v. Diamond, supra,* 629 F.2d at 960, n.7.

**13.** In *United States v. Morgan,* 307 U.S. 183, 191, 59 S.Ct. 795, 799, 83 L.Ed. 1211 (1939), the Supreme Court spoke favorably of cooperation between a court and agency entrusted with administering and enforcing a common regulatory scheme:

… court and agency are not to be regarded as wholly independent and unrelated instrumentalities of justice, each acting in the performance of its prescribed statutory duty without regard to the appropriate function of the other in securing the plainly indicated objects of the statute. Court and agency are the means adopted to attain the prescribed end, and so far as their duties are defined by the words of the statute, those words should

be construed so as to attain that end through coordinated action. Neither body should repeat in this day the mistake made by the court of law when equity was struggling for recognition as an ameliorating system of justice; neither can rightly be regarded by the other as an alien intruder, to be tolerated if must be, but never to be encouraged or aided by the other in the attainment of the common aim.

**14.** It is well settled that a district court possesses inherent authority to appoint an expert of its own choosing under Fed.R.Evid. 706. *See* Notes of Advisory Committee to Rule 706, Federal Rules of Evidence, and cases cited therein.

Accordingly, it is ORDERED that Dresser shall file an application for reissue within 20 days of the date of this Order as a condition to the continued maintenance of its infringement action in this Court. Failure to file for reissue within the specified time will result in dismissal of Dresser's suit without prejudice. Should Dresser elect to file an application for reissue, its motion for a stay will be granted, and the Court will assist the parties to insure that relevant issues are fairly presented to the patent examiner for an expedited reissue decision.

Herbert K. Atwell, pro se.

Charles A. Graddick, Atty. Gen., Richard N. Meadows, Asst. Atty. Gen., Montgomery, Ala., for Board of Pardons and Paroles.

Winfield James Sinclair, Asst. Atty. Gen., Montgomery, Ala., for James and Brookhart.

Warren S. Reese, pro se.