William GROSECLOSE, et al, ex rel. Ronald HARRIES

v.

Michael DUTTON, Warden, et al.

No. 3–84–0579.

United States District Court, M.D. Tennessee, Nashville Division.

June 8, 1984.

Jinx Woods, Larry Woods and William Marett, Jr., Richard McGee, for Ronald Harries, Ind., Hal Hardin, as guardian ad litem, appointed by Court, Nashville, Tenn., for petitioners.

Wayne Uhl, Asst. State Atty. Gen., Nashville, Tenn., for respondents.

## MEMORANDUM AND ORDER

JOHN T. NIXON, District Judge.

On June 6, 1984 this Court received a petition for a writ of habeas corpus submitted under 28 U.S.C. § 2254 by William Groseclose, an inmate on death row at the Tennessee State Penitentiary in Nashville, Tennessee, Joseph Ingle, a minister and director of the Southern Coalition on Jails and Prisons, and two anti-death penalty organizations, the Southern Coalition on Jails and Prisons and the Tennessee Chapter of the American Civil Liberties Union. The petitioners commenced this action individually and as next friends of Ronald Harries, who is confined within the custody of the respondents Michael Dutton, Warden of the Tennessee State Penitentiary in Nashville, and Ernest Pellegrin, Commissioner of the Tennessee Department of Corrections due to his conviction for first degree murder and sentence of death by electrocution. *State v. Harries*, 657 S.W.2d 414 (Tenn.1983). Because Mr. Harries is scheduled to be executed on June 13, 1984 pursuant to an order of the Tennessee Supreme Court, the petitioners seek a stay of his execution pending consideration of alleged violations of the Federal Constitution that occurred during Mr. Harries' state trial. The petition alleges that since Mr. Harries' decision to forego further judicial review of his conviction was announced, the respondents have maintained him on anti-anxiety and antidepressant drugs; thereby, rendering him unable to appreciate, realize or reconsider the impact of his decision to forego further judicial relief.

On June 6, 1984 this Court granted the petitioners' motion to proceed *in forma pauperis*, based upon the affidavit of poverty of Mr. Groseclose. During an on the record conference with counsel for the petitioners and the respondents, the Court granted the petitioners' motion for production of medical records of Mr. Harries. The respondents agreed to supply the medical records immediately. At that time the Court recognized the presence in the courtroom of Mr. Harries' legal counsel and invited them to participate as amicus. Mr. Harries' counsel interposed no objections to release of his client's medical records. To perserve the confidentiality of the medical records, the Court directed the Clerk to place under seal any medical records either party filed with the Court. Further, the Court directed both parties to be prepared on June 8, 1984 to address legal questions on the jurisdiction of this Court and the competency of Mr. Harries.

On June 8, 1984, this matter came on for consideration upon respondents' motion to dismiss the petition for writ of habeas corpus pursuant to FED.R.CIV.P. 12(b)(1) and (2). The respondents argue that the petitioners lack standing to bring this action on behalf of Mr. Harries, thus no "case" or "controversy" exists for jurisdictional purposes under Article III, section 2, clause 1 of the United States Constitution. The respondents oppose any evidentiary hearing on jurisdiction. At 9:00 a.m. this Court heard legal arguments from both sides on the issue of jurisdiction of the Court and the competency of Mr. Harries. Also during the hearing the Court granted petitioner's motion to amend the petition.

Having considered the entire record in this action and the arguments and briefs of counsel, this Court ORDERS for the reasons that follow that the execution of Ronald Harries be and hereby is stayed pending an evidentiary hearing on the jurisdiction of this Court and interwoven issue of the competency of Mr. Harries.

The petitioners seek to invoke this Court's jurisdiction to secure a writ of habeas corpus not for themselves but for Ronald Harries. Such third-party applications for a writ of habeas corpus are specifically authorized under 28 U.S.C. § 2242, which requires that the petition be "signed and verified by the person for whose relief it is intended or *by someone acting in his behalf*." (emphasis added). The third-party applicants, however, do not become the real party in interest. Instead, "the person under detention remains the real party in interest. For that reason, the 'next friend' application has been uncommonly granted and has not been made available automatically even to the natural parents of a habeas [corpus] petitioner." *Lehman v. Lycoming County Children's Services*, 458 U.S. 502, 102 S.Ct. 3231, 3244, 73 L.Ed.2d 928 (1982) (Blackmun, J., Brennan, J. and Marshall, J. concurring). (citations omitted). Generally, third-party applications are limited to incidents of infancy, incompetency or lack of time. *Evans v. Bennett*, 440 U.S. 1301, 1304, 99 S.Ct. 1481, 1483, 59 L.Ed.2d 756 (1979).

In order to assert a third-party "next-friend" application under 28 U.S.C. § 2242, the Fifth Circuit Court of Appeals in *Weber v. Garza*, 570 F.2d 511 (1978) distilled three requirements from relevant precedents. First, the third party applicant for a writ of habeas corpus for another must show why the detained person did not sign and verify the petition and the relationship and interest of the detained person. Second, the third party applicant must not be using the "next friend" vehicle to engage in the unauthorized practice of law. Third, the third party applicant under 28 U.S.C. § 2242 must "set forth an adequate reason or explanation of the necessity for resort to the 'next friend' device," otherwise the court lacks jurisdiction to review the petition. *Weber*, 570 F.2d 513–14. This three-prong analysis is consistent with the standard articulated by the Sixth Circuit in *Johnson v. Avery*, 382 F.2d 353 (6th Cir. 1967), *rev'd on other grounds*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) which emphasized that the next-friend provision in § 2242 is designed to apply when a prisoner suffers from physical or mental handicaps. *Id.* at 357.

The inmate's competency or lack thereof was the major concern of Chief Justice Burger in *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976). In that case, Gary Mark Gilmore's mother sought "next friend" status to stay the execution of her son who expressly and repeatedly stated his desire for imposition of his sentence of death. Similar to this case, the State of Utah challenged Gary's mother standing to serve as her son's next friend under § 2242. Even though next-friend status initially appeared proper for Gary's mother, Chief Justice Burger explained that the next-friend concept was wholly inapplicable because subsequent to the filing of the petition, Gary Gilmore responded to the Court that he had made a knowing and intelligent waiver of his rights, thus, the basis for standing of Gary's mother was eliminated. *Id.* at 1014, 97 S.Ct. at 437. As explained by Chief Justice Burger, the "only possible exception to this conclusion would be if the record suggested, despite the representations of Gary Mark Gilmore's attorneys, that he was incompetent to waive his right of appeal under state law and was at the present time incompetent to assert rights or to challenge" his mother's standing to assert rights on his behalf as next-friend. *Id.*

In deciding whether to issue a stay of execution for Jesse Bishop in *Lenhard v. Wolf*, 443 U.S. 1306, 100 S.Ct. 3, 61 L.Ed.2d 885 (1979), Justice Rehnquist determined that the mental competency of Mr. Bishop was the touchstone. Justice Rehnquist wrote, "[F]rom my view of the controlling legal precepts, the record evidence of competency is *more important* to the determination of whether a stay is appropriate than is the merit of the underlying application." *Id.* at 1310, 100 S.Ct. at 5. (emphasis added). Although Justice Rehnquist issued a stay in *Lenhard*, he did so because he was acting as surrogate for the Court. Justice Rehnquist explained that his personal view based on the record was against

a stay of execution. *Id.* at 1313, 100 S.Ct. at 7. The rationale advanced was squarely based on the mental competency of Jesse Bishop. That evidence of competency was based on the opinion of several examining psychiatrists and the absence of any evidence of incompetency. *Id.* at 1311–12, 100 S.Ct. at 6–7.

The evidence in this case in no way satisfies the standard enunciated by the Supreme Court in *Gilmore* and *Lenhard*, the Fifth Circuit in *Weber* or the Sixth Circuit in *Johnson*. Here, as in other cases, the respondents challenge the standing of petitioners to serve as next friends of Mr. Harries. As in *Gilmore*, the inmate, Mr. Harries, has indicated through affidavit that he does not desire that these or any other petitioners pursue potentially life-saving judicial relief before this or any other judicial tribunal.

However, unlike *Gilmore* or *Lenhard*, the record before this Court contains substantial evidence questioning the competency of Mr. Harries due to drugs being presently offered him by the respondents. The affidavit of Dr. Otto Billig is based upon a one and one-half to two hour examination of Mr. Harries that Dr. Billig conducted at the request of· Mr. Harries' legal counsel. Dr. Billig concluded that Mr. Harries' ability to rationally evaluate his alternatives is impaired due to the drugs administered to him by the respondents. The first affidavit of Dr. Harold Jordan, although not based upon personal knowledge, concurs in Dr. Billig's conclusion. However, the second affidavit of Dr. Jordon based upon his review of Mr. Harries' medical records clearly indicates that his judgment is impaired due to the drugs. Thus, the only evidence currently before the Court questions the competency of Mr. Harries. In contrast to the strong medical evidence of competency of Gary Mark Gilmore and Jesse Bishop, the medical evidence before this Court does not in any way indicate that Mr. Harries has the present ability to make a knowing and intelligent waiver of his legal rights. The current evidence of mental incompetency of Mr. Harries more than adequately satisfies his lack of participation and even

opposition to the third-party application for a writ of habeas corpus. *See Weber v. Garza* and *Johnson v. Avery*. The Court recognizes that Ronald Harries, through an affidavit, represents to the Court that he is competent to make the decision to forego further judicial review of his conviction. Mr. Harries' affidavit asserts that he is mentally competent based on the evaluation of three psychologists. In its current posture, that evidence is clearly hearsay and may not be considered by the Court. More critically, even if true, that evidence of competency does not address the petitioners' arguments that the anti-anxiety and antidepressant drugs presently being offered and consumed by Mr. Harries deprive him of the capability to reconsider and appreciate the consequences of his decision as his execution draws near.

Thus, lest the State of Tennessee unwittingly execute, with a finality that knows no equal, an inmate who appears incompetent at the direction of the incompetent person, this Court is compelled to conclude that an evidentiary hearing on the issue of Mr. Harries' competency is warranted. *Hays v. Murphy*, 663 F.2d 1004, 1009–11 (10th Cir.1981) (district court decision that mother of death row inmate lacked standing to represent her son in next-friend petition reversed due to evidence questioning her son's competence). *See also Rees v. Peyton*, 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966) (Supreme Court orders competency hearing before permitting death-row habeas corpus petitioner to withdraw his petition). Evidence on Mr. Harries' competence will perforce determine the necessity of whether the "next friend" device is necessary to protect his legal rights and represent his legal interests.

A stay of Mr. Harries' execution pending an evidentiary hearing on the interwoven issues of jurisdiction and competency of Mr. Harries, is also authorized under 28 U.S.C. § 1651. That section provides, in relevant part, as follows: "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of

their respective jurisdictions ...." The respondents concede that the Court may issue a stay under § 1651 in aid of this Court's jurisdiction. Memorandum of Law In Support of Respondents' Motion To Dismiss at 3. Given that it is well-established that § 1651 is an appropriate vehicle to stay state court judgments, such as the execution order of the Tennessee Supreme Court in this case, 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure:* Jurisdiction at 660 and n. 6 (1977) (citing *Gilmore v. State of Utah,* 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976) (Burger, C.J.)). There can also be no question that a stay under § 1651 may be issued to preserve the status quo, *FTC v. Dean Foods Company,* 384 U.S. 597, 604, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1906) and to conduct factual inquiries. *Harris v. Nelson,* 394 U.S. 286, 299, 89 S.Ct. 1082, 1090, 22 L.Ed.2d 281 (1969). Moreover, a stay in order to determine the jurisdiction of this Court is consistent with the well-established jurisdiction doctrine that a federal court always has jurisdiction to determine jurisdiction. C. Wright, *Handbook of the Law of Federal Courts* § 16 (1976) (citing *United States Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947)).

Preservation of the status quo in order to conduct an evidentiary hearing into Mr. Harries' competency and the jurisdiction of this Court is clearly necessary in this case. If the execution of Mr. Harries occurs as scheduled, then this Court's jurisdiction is necessarily abated. Only by staying the execution of Mr. Harries can this Court consider the necessary competent evidence on Mr. Harries' competence in making his decision to forego further judicial relief of his conviction. There is no evidence before the Court that Mr. Harries has been evaluated by trained medical personnel. Indeed, as the record now stands, the only evidence before the Court is that Mr. Harries' competence to make a rational decision is being influenced by the medication given to him by the respondents.

Accordingly, the Court grants the petitioner's application for stay pending an evidentiary hearing on Wednesday, June 13, 1984 at 9:00 a.m. An immediate hearing is not possible given that sufficient time must be allowed to permit the drugs now impairing Mr. Harries' judgment to abate. Thus, the respondents are further ORDERED to cease immediately from administering any further drugs of any type to Mr. Harries pending the evidentiary hearing on June 13, 1984, absent medical emergency.

It is further ORDERED that respondents permit Mr. Harries to be present at the evidentiary hearing and the petitioners' experts are permitted to interview Mr. Harries prior to the hearing;

Finally, it is ORDERED that Hal D. Hardin, Esq., of the Nashville Bar is hereby appointed as *guardian ad litem* to represent the interest of Mr. Harries.