**Gerald M. SMITH, By and Through his next friend, Eugene SMITH, Jr., Plaintiff,**

v.

**William ARMONTROUT, Warden, Missouri State Penitentiary, Defendant.**

No. 84–4379–CV–C–5.

United States District Court, W.D. Missouri, C.D.

Nov. 6, 1984.

On Order for Expert Witness Jan. 31, 1985.

Richard H. Sindel, Clayton, Mo., James Asher, ACLU, Eastern Mo., St. Louis, Mo., for plaintiff.

John M. Morris, Asst. Atty. Gen., Jefferson City, Mo., for defendant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

The first execution in the State of Missouri since 1965 is scheduled to occur in approximately sixty hours. In 1981, Gerald Smith was convicted of capital murder for the 1980 bludgeoning of an ex-girlfriend. At trial, Smith admitted the killing but asserted that, by reason of mental disease or defect, he lacked the intent necessary to be convicted of capital murder. The jury rejected Smith's diminished capacity defense and imposed the death penalty. The conviction and death sentence were upheld on appeal by the Missouri Supreme Court. *State v. Smith,* 649 S.W.2d 417 (Mo.1983) (en banc), *cert. denied* —— U.S. ——, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). Despite the pleas of his family, Smith has refused to pursue his post-conviction remedies in federal court.[1] His execution is set for 12:01 A.M. on November 9, 1984.

█ Presently pending before the Court is a habeas corpus petition submitted by Gerald Smith's brother, Eugene Smith, Jr.,

---

1. *See* 28 U.S.C. § 2254 (state prisoner may apply for a writ of habeas corpus on the ground that his state court criminal trial was infected with constitutional error.)

and a motion to permit Eugene Smith, Jr. (hereinafter "petitioner") to proceed as "next friend" to Gerald Smith.[2] *See* 28 U.S.C. § 2242 (application for writ of habeas corpus may be filed "by the person for whose relief it is intended *or by someone acting in his behalf*"). In considering a motion to proceed as "next friend" in a habeas corpus proceeding, the crucial issue is

> "whether [Gerald Smith] has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises."

*Rees v. Peyton*, 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966) (per curiam); *see, e.g., Lenhard v. Wolff*, 443 U.S. 1306, 1311–12, 100 S.Ct. 3, 6–7, 61 L.Ed.2d 885 (1979) (Rehnquist, Circuit Justice, 1979); *Evans v. Bennett*, 440 U.S. 1301, 1304–06, 99 S.Ct. 1481, 1483–84, 59 L.Ed.2d 756 (Rehnquist, Circuit Justice, 1979); *Gilmore v. Utah*, 429 U.S. 1012, 1014–16, 97 S.Ct. 436, 437–39, 50 L.Ed.2d 632 (1976) (Burger, C.J., concurring); *Hays v. Murphy*, 663 F.2d 1004, 1008 (10th Cir.1981); *Lenhard v. Wolff*, 603 F.2d 91, 93 (9th Cir.), *aff'd*, 444 U.S. 807, 100 S.Ct. 29, 62 L.Ed.2d 20 (1979); *Groseclose ex rel. Harries v. Dutton*, 594 F.Supp. 949, 953 (M.D. Tenn.1984); *Groseclose ex rel. Harries v.*

*Dutton*, 589 F.Supp. 362, 364 (M.D.Tenn. 1984); *Rumbaugh ex rel. Rumbaugh v. Estelle*, 558 F.Supp. 651, 652 (N.D.Tex. 1983); *remanded with instructions*, 730 F.2d 291 (5th Cir.1984); *Clark v. Blackburn*, 524 F.Supp. 1248, 1251 (M.D.La. 1981); *Davis v. Austin*, 492 F.Supp. 273, 276 (N.D.Ga.1980); *Evans v. Bennett*, 467 F.Supp. 1108, 1110–11 (S.D.Ala.), *rendered moot*, 440 U.S. 987, 99 S.Ct. 1986, 60 L.Ed.2d 370 (1979). If Gerald Smith is competent to make the decision to abandon further litigation, then petitioner lacks standing to proceed as "next friend" and this Court lacks jurisdiction over any case or controversy concerning constitutional errors occurring at Smith's murder trial. *Gilmore v. Utah*, 429 U.S. at 1016, 97 S.Ct. at 439 (Burger, C.J., concurring); *see* U.S. Const. art. III, § 2.

It is well-settled that federal courts always have jurisdiction to determine jurisdiction. *E.g., Groseclose ex rel. Harries v. Dutton*, 589 F.Supp. at 366. Here, petitioner's allegations and accompanying exhibits are sufficient to raise a legitimate issue as to Gerald Smith's competency.[3] At present, the evidence is not conclusive one way or the other. Consequently, the Court will order further psychiatric evaluations of Gerald Smith to aid in a determination of whether he is competent to waive his right to a federal habeas corpus proceeding.[4] In the meantime, the

---

**2.** This petition was originally filed in the United States District Court for the Eastern District of Missouri on November 5, 1984. Judge Filippine of that Court immediately transferred the case to the Central Division of this Court as a more appropriate forum. *See* 28 U.S.C. § 2241(d). Petitioner has raised substantially the same challenges to Smith's conviction as were raised on direct appeal to the Missouri Supreme Court.

**3.** In 1983, Dr. Anasseril E. Daniel and Dr. Bruce Harry examined Gerald Smith at the request of the Missouri Department of Corrections. Both of these experts concluded that Smith suffered from a mental disorder which substantially affects "his capacity to appreciate his position and make a rational choice with respect to abandoning further litigation." In 1984, Smith was examined at the request of the State by Dr. S.D. Parwatikar, Dr. Z.A. Ajans, and Richard Fontana, a clinical psychologist. Drs. Parwatikar and Ajans

concluded that Smith was not incompetent to decide to abandon further litigation. Mr. Fontana's report was more equivocal, concluding that Smith "is not adequately motivated to protect himself and to appropriately utilize legal safeguards to this end. Instead, he is actively self-destructive in using his knowledge of the legal system to receive the maximum penalty." Finally, petitioner obtained a report from a non-examining psychiatrist, Dr. Ellis A. Perlswig, who reviewed affidavits, medical records, psychiatric evaluations and newspaper clippings and concluded that Gerald Smith probably suffers from a psychotic disorder. Dr. Perlswig recommended that a thorough psychiatric evaluation should be performed.

**4.** *See, e.g., Rees v. Peyton*, 384 U.S. at 314, 86 S.Ct. at 1506; *Hays v. Murphy*, 663 F.2d at 1011–14; *Rumbaugh ex rel. Rumbaugh v. Estelle*, 558 F.Supp. at 652–53.

Court will stay Gerald Smith's execution in order to protect its jurisdiction over this matter. 28 U.S.C. § 1651; *see Gilmore v. Utah*, 429 U.S. at 1016, 97 S.Ct. at 439 (Burger, C.J., concurring); *Hays v. Murphy*, 663 F.2d at 1013–14; *Groseclose ex rel. Harries v. Dutton*, 589 F.Supp. at 366.

The Court has conferred with the parties this date concerning the procedures which should be employed in evaluating Gerald Smith's competency. Fortunately, the parties are in agreement that, in view of the conflicting psychological evaluations already in the record, it would be appropriate to perform a comprehensive psychiatric evaluation of Gerald Smith at the federal medical facility in Springfield, Missouri. In addition, each party has requested an opportunity to have its own expert examine Smith while he is in the Springfield facility. The Court concurs in these proposals. There certainly is no pressing need to rush to judgment on the issue of Smith's competency.[5] Indeed, rigid time constraints can only distort the perceptions and judgments of all those involved in this case.[6] Therefore, the Court will stay the execution of Gerald Smith indefinitely pending a psychiatric evaluation of Smith and subsequent hearing.

Accordingly, it is hereby

ORDERED that the execution of Gerald Smith is stayed pending a determination by the Court of whether he is competent to abandon further litigation.

It is further

ORDERED that at the earliest opportunity Gerald Smith shall be transferred to the federal medical facility in Springfield, Missouri for a comprehensive psychiatric/psychological examination and evaluation. Each party shall submit to the Court within seven (7) days of this date a state-ment of the specific tests it wants to have conducted. Each party shall have an opportunity to have its own expert psychologist or psychiatrist examine Gerald Smith while he is at the Springfield facility. Discovery shall be available to either party upon application to the Court. A hearing will be scheduled after the Court has had an opportunity to review the reports of the examining experts.

## ON ORDER FOR EXPERT WITNESS

Eugene Smith and The American Civil Liberties Union have brought this habeas corpus action pursuant to 28 U.S.C. § 2254 on behalf of Eugene Smith's brother, Gerald Smith, who is currently incarcerated at the Missouri State Penitentiary. Gerald Smith was convicted of capital murder by a Missouri state court and sentenced to death. The conviction and sentence were upheld on direct appeal by the Missouri Supreme Court, *State v. Smith*, 649 S.W.2d 417 (Mo.1983). Gerald Smith subsequently refused to pursue his post-conviction remedies on his own behalf, and an execution date of November 9, 1984 was set.

On November 6, 1984, this Court stayed Gerald Smith's execution in order to determine whether he is competent at the present time to waive his right to federal habeas corpus review. In order to make such a determination, the Court ordered that Gerald Smith be transferred to the Federal Medical Facility at Springfield, Missouri, for a comprehensive psychiatric/psychological examination and evaluation. The Court directed that each party had the opportunity to have its own expert psychologist or psychiatrist conduct an examination at the Springfield facility. In addition, the Court requested that the United States Bureau of Prisons perform a number of tests on Gerald Smith,[1] and to

---

**5.** Considering the irreversible character of the death penalty, the Court believes that it is best to proceed with the utmost caution.

**6.** *Cf. Evans v. Bennett*, 467 F.Supp. at 1110 (rejecting conclusion of petitioner's non-examining expert that prisoner was incompetent and denying stay of execution in eleventh-hour attempt to file a "next friend" habeas corpus petition),

*rendered moot*, 440 U.S. 987, 99 S.Ct. 1986, 60 L.Ed.2d 370 (1979).

**1.** The Bureau was directed to administer the following tests: the Minnesota Multiphasic Personality Inventory (MMPI); the Wexler Adult Intelligence Test (WAIT); the Thematic Apperception Test (TAT); the Rorschach Test; the Sentence Completion Test; an EEG with photic

issue an opinion as to Smith's competency to waive his post-conviction remedies.

At the present time, the Bureau of Prisons has completed its examination and has submitted its report to the Court. The reports of the parties' experts have yet to be completed.

■ An evidentiary hearing has been set for March 5, 1985, in Jefferson City, Missouri, at which evidence relevant to Gerald Smith's competency will be presented to the Court. In addition to the examination and reports prepared by the Bureau of Prisons and the experts retained by the parties, the examination and opinion of an expert appointed by the Court is warranted in light of the complex issues to be decided and the magnitude of the resulting consequences. Pursuant to Federal Rule of Evidence 706, the Court may appoint an expert witness of its own selection. The Court appointment of an expert witness is within the discretion of the trial court judge. *Georgia-Pacific Corp. v. United States,* 640 F.2d 328, 334, 226 Ct.Cl. 95 (1980). The Court may exercise its power to appoint an expert on its own motion. *Fugitt v. Jones,* 549 F.2d 1001, 1006 (5th Cir.1977). This power exists to aid the Court in a just disposition of a case. *Scott v. Spanjer Bros. Inc.,* 298 F.2d 928, 930 (2d Cir.1962). Where mental competency is in issue, expert testimony is of great importance, and the Court has the inherent power to require a psychiatric examination. *United States v. Bohle,* 445 F.2d 54, 66 (7th Cir.1971).

■ An expert witness shall not be appointed unless he consents to act. Fed.R. Evid. 706(a). Apart from this limitation, the trial court has the authority to appoint an expert of its own choosing. *See Dresser Industries, Inc. v. Ford Motor Co.,* 530 F.Supp. 303, 313 (D.C.Tex.1981). A court-appointed expert shall be informed in writing by the Court of his duties, and the expert is to advise the parties of his findings. Fed.R.Evid. 706(a). The expert's deposition may be taken by any party, and he may be called to testify by the Court or any party. *Id.* In addition, the expert is subject to cross-examination by each party, including a party calling him as a witness. *Id.* Expert witnesses appointed under this rule are entitled to reasonable compensation as determined by the Court, and such compensation shall be paid by the parties in such proportion and at such time as the Court directs. Fed.R.Evid. 706(b).

■ The Court has requested Dr. William V. McKnelly, a psychiatrist affiliated with the Kansas University Medical Center, to serve as the Court's expert in this proceeding, and Dr. McKnelly has consented to the appointment. Pursuant to this order, Dr. McKnelly is authorized and directed to undertake any appropriate psychological, psychiatric or physical examination of Gerald Smith so that an informed opinion may be made concerning Smith's competency. These tests will be conducted by Dr. McKnelly at the Missouri State Penitentiary on February 16 and February 17, 1985.

■ Following his examination, Dr. McKnelly will prepare a written report describing his examination and his findings. This report will be filed with the Court and submitted to the parties, and will include Dr. McKnelly's opinion regarding Gerald Smith's mental competency under each of the following standards:

(1) Whether Gerald Smith "has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder or defect which may substantially affect his capacity in the premises." *Rees v. Peyton,* 384 U.S. 312, 314 [86 S.Ct. 1505, 1506, 16 L.Ed.2d 583] (1966).

(2) Whether because of mental illness or disorder, Gerald Smith would be unlikely to make decisions about his own interests

---

stimulation and hyperventilation; a CAT scan; and a full neurological examination for organic brain disorders, including either the Halsted-Reitan or Luria Nebraska Test. All of these tests were administered with the exception of the Sentence Completion Test, which Gerald Smith refused to take.

which would result in substantial damage to his mental or physical well-being.

The parties are directed to take all steps necessary to facilitate Dr. McKnelly's examination. Dr. McKnelly may be reached at the following address:

Dr. William V. McKnelly
Kansas University Medical Center
39th and Rainbow
Building 11–G
Kansas City, Kansas 66103

The parties are advised that copies of any correspondence with Dr. McKnelly should be sent to the Court. Accordingly, it is hereby

ORDERED that Dr. William McKnelly is appointed as the Court's expert witness pursuant to Fed.R.Evid. 706. It is further

ORDERED that Dr. McKnelly is authorized to perform tests and examinations consistent with this order on Gerald Smith at the Missouri State Penitentiary on February 16–17, 1985. It is further

ORDERED that the parties are to take all steps necessary so that Dr. McKnelly's examination may be carried out in an efficient manner.